35 N.Y.2d 437 (1974)
The People of the State of New York, Respondent,
v.
Dwight Green, Appellant.
Court of Appeals of the State of New York.
Argued December 16, 1974.
Decided December 20, 1974.
Stanley Neustadter and William E. Hellerstein for appellant.
Richard H. Kuh, District Attorney (Steven R. Kartagener, Lewis R. Friedman and Alan Kovacs of counsel), for respondent.
Judges JONES, WACHTLER, RABIN and STEVENS concur with Chief Judge BREITEL; Judge JASEN dissents and votes to affirm in a separate opinion in which Judge GABRIELLI concurs.
*439 Chief Judge BREITEL.
Defendant appeals from a conviction, after a jury trial, for felonious possession of dangerous drugs, and a sentence of five years' probation.
The case was closely contested, defendant testifying in his own behalf. The primary evidentiary issue turned on a police officer's identification of defendant, previously unknown to him, as the person who threw a paper bag containing 56 glassine heroin envelopes from an upper-story window of an apartment building into a rear courtyard. The jury deliberated for most of a day, and returned a guilty verdict, late at night, only after twice reporting their inability to agree on a verdict and being told to resume deliberations. Defendant, who denied any connection with the paper bag or its contents, had, for years since he had been mustered out of the armed services, been gainfully employed. He was married and had five children. He was not a drug addict.
The issue is whether in this close case it was error to allow police testimony, over objection, that one month earlier the police had attempted to enter defendant's apartment, based upon a drug complaint of three months past, and had been refused admittance. The police had then left and did not return *440 until the day of the arrest, when they were freely admitted to the apartment.
There should be a reversal and a new trial ordered. The prior visit to the apartment was irrelevant. The old drug "complaint" was in no way connected with defendant and evidently there was no probable cause to obtain a warrant or effect a warrantless entry into the apartment. The prejudicial effect of this evidence in casting suspicion upon defendant as the subject of an earlier drug investigation must have been influential in obtaining a guilty verdict from a jury which twice reported itself deadlocked.
In February, 1970, three police officers, Anderson, Rainey and Quinlan, were conducting an investigation to determine if narcotics were being stored in defendant's apartment. Toward this end, one of the officers knocked on the door of that apartment, while the other two remained outside the building in the rear courtyard. After knocking on the door, Anderson, in response to an inquiry, announced that he was a police officer. Anderson testified that he then heard scurrying around in the apartment and the opening of a window. A few seconds later, the door was opened by defendant. There was a brief conversation.
Shortly, the two other officers, Rainey and Quinlan, came upstairs and the two occupants of the apartment, defendant and one Holmes, were arrested. Patrolman Quinlan testified that while he was in the rear courtyard he had observed a paper bag thrown from a second-floor window. The bag contained 56 glassine envelopes of what was later learned to be heroin. Patrolman Quinlan did not observe how, or by whom, the bag was thrown. Officer Rainey, who was also in the rear courtyard, testified that, from another angle, he observed defendant throw the packet from the window adjacent to the one described by Patrolman Quinlan.
Over objection, Rainey was permitted to testify that in January, 1970, one month before the arrest, he had been instructed to investigate an October, 1969 narcotics complaint involving the same apartment. On that occasion, Rainey knocked on the door of the apartment, and, after identifying himself, he heard a window opened and then closed. He again identified himself *441 and asked if he could be admitted. A voice responded "no" and Rainey left, saying that he would return later.
Defendant, after testifying that he was 26 years of age, gainfully employed, a Vietnam veteran, married with five children, admitted that he had previously been convicted of unlawful possession of a pistol as a misdemeanor and fined $200. Defendant denied ever having used or possessed drugs. On the day of the arrest he was engaged in moving out of the apartment. He denied having thrown anything out of any window, or that he had owned or possessed the paper bag or its contents. Defendant testified that the window of the apartment was three stories off the ground, and covered by venetian blinds and a protective gate.
The foregoing constitutes the basic facts. The case turned on the identification of defendant, rather than his friend Holmes who was also in the apartment, as he who had thrown the bag from the apartment window, assuming it was the window of defendant's apartment. Of course, there was a prima facie case if the police testimony were accurate, but it could hardly be more slender.
Crucial to persuasion would be proof consisting of a net of suspicion about defendant or his apartment. Allegedly the apartment had been the subject of a stale and unproven complaint about illicit drugs by an unidentified source. This evidence proved nothing of defendant's involvement with drugs, then or on the day of the arrest. Indeed, the only argument offered by the prosecution to sustain admission of this hollow but suggestive evidence is that it was necessary to explain that the officers had reason to visit the apartment again in February and to deploy themselves as they did.
The short of it is that if the officers credibly and accurately observed what they testified they had observed, there was no need to explain their presence. On the other hand, the prejudicial effect of the testimony about the prior visit may well have been the pennyweight that influenced the reluctant deadlocked jury.
Events antecedent to and independent of a crime, where necessary to explain an ambiguous but material fact in the case, are relevant and may be introduced at trial. Indeed, some cases are sufficiently complex that the jury would wander helpless, *442 as in a maze, were the decisive occurrences not placed in some broader, expository context (see People v. Stanard, 32 N Y 2d 143, 146; see, also, People v. Atkins, 7 A D 2d 393, 397). On the other hand, merely past events lacking both relevance and probative value are inadmissible. In many instances such background material is not prejudicial and passes without notice. In this instance, however, where the case was close and the jury deadlocked, there is an inescapable inference that the jury gave some probative weight to this irrelevant information, and that its admission was therefore prejudicial error (see People v. Stanard, 32 N Y 2d 143, 146-147, supra; People v. Atkins, 7 A D 2d 393, 397-398, supra; People v. Gleason, 285 App. Div. 278, 282).
The situation would be different, of course, if a "frame-up" defense were raised and the prosecution, in rebuttal, were constrained to introduce the prior visit to explain why the police "staked out" the defendant's apartment on a subsequent evening. The background event was not here introduced to rebut a "frame-up" defense, but to bolster the charge of defendant's criminality.
On this analysis, it is unnecessary to reach a further evil in allowing evidence of the prior visit. If its suggestiveness is successfully communicated to the jury, it would, in effect, constitute proof of a prior uncharged crime not admissible under the more common exceptions as those to establish intent, motive, lack of mistake or accident, common scheme, or identity (People v. Molineux, 168 N.Y. 264, 291-294; see People v. Fiore, 34 N Y 2d 81, 84; see, generally, Richardson, Evidence [10th ed.], §§ 170-181).
Defendant also contends that there was error in the court's charge on knowledge and possession of narcotics, because it alluded to the lucrative rewards of drug trafficking, and stressed that possession of drugs is not likely to be either inadvertent or without knowledge of their character. There was no error. Defendant's total denial of possession did not make knowledge a contested issue. Nevertheless, unless conceded, every element of a crime must be found by a jury before it may return a verdict of guilty (CPL 70.20; People v. Walker, 198 N.Y. 329, 334-335). And it is also correct that because of the nature of narcotics traffic and high monetary value attached to illicit drugs, ignorance *443 of one's possession of narcotics or knowledge of their nature or value is highly unlikely (People v. Reisman, 29 N Y 2d 278, 285-287).
It makes no difference in considering the court's charge on knowledge and possession that defendant was concededly not a drug addict and that he was charged only with possession, and not the sale, of dangerous drugs. It was still relevant and even essential to establish knowing possession. The illegal character of narcotics and their high value in illicit traffic were relevant to establish knowledge circumstantially once the jury might have been convinced that there had been possession. Put another way, there not only had to be possession, but guilty possession.
A caution, however, is necessary. The instruction here was narrowly confined to the issue of knowledge and to that limited extent it was permissible. In another context the instruction might have been inappropriate.
Since, however, there was error in the admission of proof of the prior police visit, there must be a new trial.
Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.
JASEN, J. (dissenting).
I disagree with the majority's analysis of the relevancy of the facts and circumstances surrounding Patrolman Rainey's prior visit to the defendant's apartment one month earlier.
With no neutral witnesses to the events on the day of defendant's arrest, the issue foremost in the mind of the jury was the credibility of the witnesses. Defendant, a veteran, married, a father, gainfully employed, and not a user of narcotics, was, with the exception of a previous weapons conviction, an upstanding member of the community. To be sure, the defense strategy exploited these facts. Against that background the police "stake-out" takes on the appearance, as claimed by defendant, of a "frame-up". In this light, it cannot be said, as a matter of law, that testimony as to the earlier stage of the investigation of activities involving the same apartment was totally lacking in relevancy. If, without any apparent justification, the police undertake a "stake-out" and then claim that this citizen possessed a large quantity of heroin, the jury could *444 logically infer that a "frame-up" had taken place. However, if the jury is told of the earlier investigation of this apartment in conjunction witih suspected drug activity, that the occupant refused to admit the officer, and that a suspicious opening and closing of a window was heard, then the credibility of the police officers is enhanced and the defendant's claim of a "frame-up" becomes more likely to be discredited by the jury. Without this relevant background information, Officer Rainey's and Quinlan's testimony that they had gone to the back of the building to observe the second-floor windows, although having observed no contemporaneous activity, would hardly have been credible. Furthermore, the exclusion of this background evidence would have made it difficult for the jury to understand just why the procedures followed by the police in this instance were necessary. Thus, this background evidence was clearly relevant and proper to be placed before the jury.
Accordingly, I would affirm the judgment of conviction.
Order reversed, etc.