■    THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN KEOUGH, Also Known as JAMES KEOUGH, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Queens County, rendered January 4, 1973, convicting him of attempted robbery in the second degree, possession of a weapon, etc., as a felony, and menacing, upon a jury verdict, and imposing sentence. Judgment reversed, as a matter of discretion in the interest of justice, and new trial ordered. On a dark street at approximately 11:00 P.M. on September 14, 1971, as Mr. and Mrs. Kopstein were walking near their home in Queens, an unknown man suddenly stepped onto the sidewalk in front of them, blocking their path, and said "don't move" or "don't make a move". Mr. Kopstein told his wife that he believed they were going to be held up. Mrs. Kopstein saw the perpetrator point a gun and she started to scream; soon thereafter Mr. Kopstein commenced screaming. Apparently this screaming panicked the perpetrator, as he left the Kopsteins unmolested and ran to a nearby car, which sped away after he entered it. There were at least three other persons in that car besides the perpetrator. About 30 minutes later the Kopsteins were called down to the police precinct where they identified appellant in a lineup. Appellant took the stand on his own behalf and proclaimed that he was innocent and that the complainants were mistaken in their identification. He testified that, while he was in the afore-mentioned car, he did not get out until the car was stopped by the police and he was taken into custody, that Joseph Leary, who was seated in the front of the car, had gotten out in the approximate area of the incident, claiming that he had to urinate, and that Leary returned a short time later with a gun in his hand and told the driver to get out of the area fast—exclaiming that he had just tried to rob a man and a lady. When police stopped the car, a gun was taken from under the seat which Leary was on. The defense called two female witnesses who knew Joseph Leary, but they were precluded (under the hearsay rule) from testifying that Leary had admitted to them that he, not appellant, had attempted to rob the Kopsteins. In our view, the trial court erred in failing to explain to defense counsel the reason for the sustaining of the prosecutor's objections to certain testimony from the two female defense witnesses. In New York, "an admission against penal interest will be received where material and where the person making the admission is dead, beyond the jurisdiction and thus not available; or where he is in court and refuses to testify as to the fact of the admission on the ground of self incrimination" *(People v Brown,* 26 NY2d 88, 94). At bar, Leary took the stand and denied that he or appellant had left the car in question at any time prior to its being stopped by the police, but he was never asked whether he had admitted to anyone that he committed the crimes for which appellant stands convicted, and thus never invoked his privilege against self incrimination. Accordingly, the proper foundation was never laid and the hearsay objection was never overcome; thus, the testimony of the two female defense witnesses was properly excluded. The trial court never explained to defense counsel that it was technically necessary for him to ask certain questions of Leary first, and refused, although requested to do so, to explain its reasons for sustaining the People's objection. Such an explanation would have afforded defense counsel the opportunity to cure the prosecutor's objections. At the *Wade* hearing, one of the afore-mentioned female witnesses testified as to Leary's admission of guilt; the Trial Judge knew exactly what information defense counsel was trying to elicit and its importance to appellant's case. The Supreme Court, in *Chambers v Mississippi* (410 US 284, 302), observed that "Few rights are more fundamental than that of an accused to present

witnesses in his own defense" and that "where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." Given the facts and circumstances of this case, a dark street corner at night, a brief encounter, the state of shock which the complainants admit they were in during the incident, the steadfast denial of guilt by appellant, who took the stand on his own behalf, and the possibility of witnesses who could exculpate appellant, a new trial should be had in the interest of justice. Furthermore, the prosecutor twice informed the jury that while he (the prosecutor) was under an obligation to present his case, the defense also had an obligation to present its case and to call witnesses who it thought would be favorable to it. This was error (cf. *People v Miller,* 45 AD2d 768). Finally, the trial court erroneously charged that the "defendant * * * is guilty of attempted robbery in the second degree if * * * this defendant * * * has, with criminal intent, made some positive steps beyond mere preparation looking to the performance of an act which if perpetrated, beyond a reasonable doubt would be *a crime."* (Emphasis supplied.) A person is guilty of attempted robbery if, with intent, he engages in conduct which tends to effect the commission of the *crime of robbery* (see Penal Law, § 110.00). Hopkins, Acting P. J., Rabin, Shapiro and Titone, JJ., concur; Cohalan, J., dissents and votes to affirm the judgment.