■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWARD GILLESPIE, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered April 7, 1975 (the date on the clerk's extract is June 3, 1975), convicting him of criminal sale of a controlled substance in the third degree (two counts) and criminal possession of a controlled substance in the third degree (two counts), upon a jury verdict, and imposing sentence. Judgment reversed, on the law, and new trial ordered. No issues have been raised with respect to the sufficiency of the facts. The prosecution, on its direct case, sought to introduce evidence of an earlier alleged narcotics transaction which took place in January in defendant's apartment while he was present. The prosecution's claimed purpose in doing so was to establish how and when the police first became aware of defendant's name. On the direct examination of one of the police officers, the following questions were asked by the prosecutor, to which the police officer responded as follows: "Q How long prior to the date of the 6th of March, did you know the defendant's name? A About three months. Q And when was the first time that you knew of the defendant Edward Gillespie? A It's approximately three months prior to the sale on the 6th. Q And approximately three months prior to the date of the 6th of March, in '74,

were you on duty that day? A Yes, sir, I was. Q And where were you located? A Vicinity of East [3]4th Street and Newkirk Avenue, on another buy operation. THE COURT: May I see counsel at the bench?" During colloquy at the bench, the court asked the prosecutor for an offer of proof as to what he was seeking to establish by the foregoing testimony. The prosecutor answered that "I'm seeking to establish that this officer knew the identity of Edward Gillespie prior to that date." The prosecutor went on to explain that the witness, Officer Maddalena, had been part of a surveillance team outside of 667 East 34th Street in the latter part of January, 1974, "doing surveillance on a buy operation" which had taken place in defendant's apartment. The prosecutor further explained that Maddalena had been informed by other officers (presumably an undercover agent who was present in the apartment) that defendant had been present during a sale of narcotics which took place in his apartment. Defense counsel objected to the introduction of such testimony on the basis that it was hearsay and irrelevant. The court then remarked to the prosecutor: "Yes, what difference does it make whether he learned his name three months earlier or he learned it when he walked into the courtroom today? What's the relevance to this procedure? * * * Now it seems to me that * * * if you go any further in this direction * * * there's a possibility you may create error." The prosecutor decided to "take your Honor's advice at this point, and counsel does have an objection. I'll leave it at that." However, in questioning the next witness, Officer Indimine, the prosecutor elicited the following testimony on direct examination: "Q Officer, did you know the name of Edward Gillespie prior to the 13th day of March? A Yes, I did. Q Approximately how long before the date of March 13, 1974, did you know that name? A Several months. Q And did you have an occasion to be at 667 East 34th Street prior to the 13th day of March? A Yes, I did. Q Was it on the 6th of March? A No, it was in the latter part of January." On redirect examination of Indimine, the prosecutor continued: "Q I believe the question was, officer, did you know of 667 East 34th Street from the prior investigation? Is that correct? A Yes. Q Did you know [defendant's apartment] was 2-M or 3-M from that prior investigation? A I believe it to be 2-M. Q And approximately how long before the 13th of March did you know that particular occasion *[sic]*? A At least several months." Finally, in cross-examination of Sergeant Toal, who was called as a defense witness when the prosecution failed to call him as one of theirs, the following colloquy ensued between the prosecutor and the officer: "Q Officer, I believe you stated you believed the apartment mentioned, the apartment lived in by the defendant Gillespie was apartment 3-M, is that correct? A Yes. Q How did you ascertain that that was the apartment? * * * A I was informed by other police officers. * * * Q When were you informed by other police officers? [DEFENSE COUNSEL]: Objection, your Honor. THE COURT: Sustained. [PROSECUTOR]: I take exception again, your Honor. Q When you were informed of the name of Edward Gillespie, was it in connection with this particular investigation? A No, it was in connection with another —THE COURT: Stop [DEFENSE COUNSEL]: Objection, your Honor. THE COURT: Sustained. Don't be so slow in your objections." In his summation, the prosecutor again alluded to the earlier investigation: "The testimony in this particular case, the Police Department discovering the name of Edward Gillespie through an investigation * * * Counsel has asked the undercover officer and Sgt. Toal, 'did you know of Edward Gillespie prior to March 6th?' 'I knew who he was prior to March 6th. I knew his name in the latter part of January' ". The prosecution's introduction of evidence tending to connect the defendant with a prior drug investigation was improper and erroneous.

In *People v Green* (35 NY2d 437, 440), a case involving an identical issue, the Court of Appeals held: "There should be a reversal and a new trial ordered. The prior visit to the apartment was irrelevant. The old drug 'complaint' was in no way connected with defendant and evidently there was no probable cause to obtain a warrant or effect a warrantless entry into the apartment. The prejudicial effect of this evidence in casting suspicion upon defendant as the subject of an earlier drug investigation must have been influential in obtaining a guilty verdict from a jury which twice reported itself deadlocked." The court went on to note (p 441): "Crucial to persuasion would be proof consisting of a net of suspicion about defendant or his apartment. Allegedly the apartment had been the subject of a stale and unproven complaint about illicit drugs by an unidentified source. This evidence proved nothing of defendant's involvement with drugs, then or on the day of the arrest. Indeed, the only argument offered by the prosecution to sustain admission of this hollow but suggestive evidence is that it was necessary to explain that the officers had reason to visit the apartment again in February and to deploy themselves as they did." We note that in the instant case a prior trial had resulted in a hung jury. Apparently, as in the *Green* case, there was a close issue to be decided by the jury. Additionally, under the facts and circumstances here, while there was no objection taken by defense counsel, the remark of the prosecutor to the effect that the defendant could have produced the confidential informant was improper. The trial court also erred in its charge as to the availability to both sides of the missing witness. The burden of proof is on the prosecution and never shifts *(People v Rencher,* 49 AD2d 609, 610; *People v Keough,* 51 AD2d 808, 809). Lastly, we find no merit to defendant's claim that the trial court's refusal to allow his father to remain in the courtroom during the testimony of the undercover officer was an abuse of discretion and a denial of his right to a public trial. The trial court properly exercised its inherent discretion to close the courtroom *(People v Hinton,* 31 NY2d 71). Cohalan, J. P., Damiani, Hawkins and Mollen, JJ., concur.