■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWIN NEGRON, Appellant.—Judgment, Supreme Court, New York County (Eugene Nardelli, J.), entered April 10, 1985, which convicted defendant, after a jury trial, of the crime of criminal sale of a controlled substance in the third degree (Penal Law § 220.39), and sentenced him, as a predicate felon, to an indeterminate term of imprisonment of 4½ to 9 years, is unanimously reversed, on the law, on the facts, and as a matter of discretion in the interest of justice, judgment vacated, and the matter is remanded for a new trial.

In substance, on April 5, 1984, the defendant was arrested after allegedly being observed by the police making an illegal narcotic sale.

Thereafter, by a three-count indictment, filed April 19, 1984, defendant was charged by a New York County Grand Jury with the crimes of a criminal sale of a controlled substance in the third degree (Penal Law § 220.39), criminal possession of a controlled substance in the third degree (Penal Law § 220.16), and, criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03). The charges in this indictment pertain to defendant's single sale of drugs, on April 5, 1984, to Mr. Raphael Feliciano (Mr. Feliciano).

On January 23, 1985, the defendant's jury trial commenced. At this trial, the People's case against the defendant principally consisted of the testimony of Police Officer Ronald Severin (Officer Severin), who was assigned in April 1984 to the Ninth Precinct's narcotic street enforcement unit.

Officer Severin testified, in pertinent part, as follows: at approximately 8:45 P.M., on April 5, 1984, he was on duty, in plain clothes, and he was stationed on the roof of 736 East Ninth Street, which was a five-story building, in New York County; from that vantage point, the witness, through a pair of binoculars, could clearly observe the defendant, who was standing on the pavement directly beneath him; the lighting conditions were good, and the witness' view of the defendant was unobstructed; during the approximately 35 to 40 minutes, the witness watched the defendant, he "observed [about 3 or 4] people * * * come up the block from Avenue D on the south side of Ninth Street [and separately approach the defendant], engage in some conversation [with defendant, and give him United States] currency in exchange for large aluminum tinfoils. At this time the person who had purchased the tinfoil

would walk back eastbound toward Avenue D"; while the witness did not see anyone else in the immediate vicinity of the defendant, it appeared to the witness that some of the persons, mentioned *supra,* he saw individually approach the defendant, had been directed to the defendant by a person standing on the corner of Ninth Street and Avenue D; the witness referred to that person as a "steerer", and, he defined a "steerer" as "someone who facilitates the crime, or a person who will take customers who are out to buy drugs, tell them where the dealer is standing, because the dealer does not normally want people to crowd him".

Furthermore, in pertinent part, the witness testified that, at approximately 9:00 or 9:15 P.M., he observed an individual, later identified as Mr. Feliciano, approach the defendant, hand him United States currency in exchange for a large aluminum tinfoil; and, when this transaction was completed, the witness immediately transmitted to the backup team, mentioned *supra,* Mr. Feliciano's description, and the direction in which he was walking.

Sergeant Robert Zink testified that he arrested Mr. Feliciano.

Officer Severin testified that, about 10 to 15 minutes after being notified of the arrest of Mr. Feliciano, he radioed the backup team to arrest the defendant.

Police Officer Timothy Cummings (Officer Cummings), another member of the backup team, testified, in substance, that he arrested defendant, in the presence of Officer Severin, who identified the defendant, first at the scene of the sale, and later at the Ninth Precinct. Following defendant's arrest for his sale to Mr. Feliciano, Officer Cummings testified he searched defendant, and, although he did not find any narcotics, he did find $50.

Finally, on redirect examination, Officer Severin testified, based upon his police experience, about the general business practices of drug dealers on East Ninth Street. This witness testified, in substance, that, while dealers on East Ninth Street usually sold cocaine in large tinfoils containing $10 worth of cocaine, the dealers on the rest of the lower east side usually sold smaller tinfoils containing only $5 worth of cocaine; and, the dealers "usually carry [the tinfoils] in five-dollar packages, fifty-dollar bundles. So what happens is normally the routine would be to stash a thousand-dollar or five-hundred dollar load somewhere, whether it be an abandoned building, in the dirt, or a car fender. And then hold them,

stash them in a car fender, and then hold the five tins and put them in your pocket, because it's easier to get rid of five tins rather than fifty or a hundred tinfoils. What [the dealer] would do is * * * sell out his fifty dollars worth * * * because the manager of the operation wouldn't want him to get arrested with $500. That hurts the operation. They don't care if [a dealer gets] caught with $50 on [him]; that doesn't hurt the operation. So the most [the dealer will] have at any one time is $50. Some cases $100".

After the People rested their case, the defense rested, without summoning a witness.

Subsequently, the jury returned a verdict, which found defendant guilty of the crime of criminal sale of a controlled substance in the third degree, and, thereafter, defendant was sentenced, as mentioned *supra.*

On appeal, defendant contends that the trial court committed reversible error, when it permitted Officer Severin to testify about uncharged crimes, relating to the several alleged drug sales made by defendant before he made the last sale to Mr. Feliciano, which was the only sale defendant was charged with in the indictment, as mentioned *supra.*

Evidence of uncharged crimes "may not be received unless its probative value exceeds the potential for prejudice resulting to the defendant" *(People v Alvino,* 71 NY2d 233, 242). Moreover, the Court of Appeals held in *People v Crandall* (67 NY2d 111, 114 [1986]) that "[e]vidence concerning sales of narcotics other than that for which defendant is on trial is improperly admitted * * * when * * * [evidence of such other sales] is not essential to proof of the crime in issue".

The facts in the case of *People v Crosby* (51 AD2d 902 [1st Dept 1976]) are almost identical to those found in the instant case. Although the defendant in *People v Crosby (supra)* was charged with a single drug sale, the prosecutor was allowed to present police testimony that defendant had made six other unrelated, uncharged narcotic sales, while he was under the same surveillance. In reversing defendant's conviction, in the interest of justice and remanding for a new trial, we held in *People v Crosby (supra),* in pertinent part, that "[c]learly, the purpose of this testimony [about the uncharged sales] was to establish defendant's propensity to deal in narcotics and, as such, was inadmissible *(People v Condon,* 26 NY2d 139) * * * Scrutiny of the record discloses that the jury in its deliberation may well have considered the evidence of the * * * uncharged sales [as] proof of guilt not related to the actual sale [with which defendant was charged]".

Applying the legal authority, *supra,* to the facts of the instant case, we find that the trial court erred in allowing the testimony about the uncharged sales, since that evidence was not essential to proving whether defendant had made the single sale to Mr. Feliciano, and the jury may have considered the evidence of the uncharged sales as proof of guilt not related to the sale made to Mr. Feliciano. In other words, since the prejudicial effect of the evidence outweighs its probative value, we find "the purpose of this testimony was to establish defendant's propensity to deal in narcotics and, as such, was inadmissible" *(People v Crosby, supra).*

Defendant also argues that the trial court committed reversible error when it permitted the redirect testimony of Officer Severin relating to the behavior patterns of drug dealers, who were part of organized drug operations that operated on East Ninth Street, which was the location where defendant made the drug sale to Mr. Feliciano. Our examination of that testimony, which is set forth *supra,* indicates to us that its main objective was to convey to the jury an inference that defendant was part of an organized drug operation. However, our review of the record indicates there is no evidence to support any inference that defendant was part of any such operation. Accordingly, we find the purpose of this background testimony "could only have been to focus on the narcotic trade in general, thereby prejudicing the jury against defendant. The evidence introduced should, rather, have focused more sharply on the defendant and the single sale with which he was charged" *(People v Maldonado,* 50 AD2d 556 [1st Dept 1975]). In view of our finding that the background testimony was too prejudicial, we find it is inadmissible.

Defense trial counsel did not interpose specific objections to either the testimony of Officer Severin relative to the uncharged crimes, or to his redirect testimony concerning background, and, therefore, these issue have not been properly preserved for review (CPL 470.05 [2]). However, we find these errors so substantial, that we reverse the conviction, in the interest of justice, and remand for a new trial *(see, People v Maschi,* 76 AD2d 808 [1st Dept 1980]).

We have examined the other points raised by defendant, and find them to be without merit. Concur—Kupferman, J. P., Ross, Kassal, Rosenberger and Ellerin, JJ.