THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PASTOR ORTIZ, Appellant.

First Department, December 15, 1988

## APPEARANCES OF COUNSEL

*Maryjane C. Shimsky* of counsel *(Mark Dwyer* with her on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

*Adrienne Hale* of counsel *(Susan Salomon* and *Chi Mo* with her on the brief; *Philip L. Weinstein,* attorney), for appellant.

**OPINION OF THE COURT**

KASSAL, J.

The atmosphere of heightened public concern regarding large-scale drug trafficking in which narcotics offenses are prosecuted today requires ever-greater care in weighing the probative value of uncharged, drug-related crimes against its potential prejudice to the accused.

By indictment No. 8039-86, filed November 3, 1986, appellant was charged with criminal sale of a controlled substance in the second degree. The charge stemmed from an alleged sale of narcotics to undercover Detective Ernest Blount on October 6, 1986.

At trial, commenced on April 27, 1987, Detective Blount testified that he was a member of a team of law enforcement agents working for the Drug Enforcement Administration Task Force (DEATF), a joint Federal, State and local entity, whose purpose was "to target" and "infiltrate [the] organizations" of "higher level narcotics traffick[ers]". The specific assignment which resulted in appellant's arrest was an investigation, based upon information supplied by a paid confidential informant, of four named individuals: Elvin Rodriguez, Dario Rodriguez, Raphael Ruiz and Maria Gonzalez. The plan of operation was to purchase large quantities of "crack" cocaine from Elvin Rodriguez "to determine the source of supply".

Blount's testimony, in pertinent part, described the events leading to appellant's arrest as follows:

On October 2, 1986, the confidential informant introduced Blount as a prospective buyer to a man named Elvin. Although Elvin, later identified by Blount as appellant Pastor Ortiz, asked Blount "if he wanted anything", no sale was transacted at that meeting, which lasted approximately one minute. Instead, the informant told Elvin (hereinafter "defendant" for the purposes of Blount's testimony) that he was merely letting him know who Blount was.

Four days later, on October 6, 1986, Blount was "introduced again" by the informant to defendant and to a second man named "Dario". After a brief conversation on the street, Blount and the informant accompanied the two men into 601 West 142nd Street, where defendant opened the door to apartment No. 2B with a key. There, in a room illuminated by a fluorescent light, Blount negotiated for the purchase of 100 vials of "crack" for $800. Throughout the transaction, Dario

spoke in Spanish to defendant and then relayed information in English to Blount. The detective explained that he would purchase the 100 vials of "crack" only on condition that he could purchase 3,000 vials at a later date, because the smaller purchase was to serve as a sample for his customers. Dario conversed with defendant and then assured Blount that this would present no problem. In response to the undercover's inquiry regarding price, Dario again consulted with defendant in Spanish and, after doing so, informed Blount that the price would be $24,000.

Upon completing the purchase of 100 vials with $800 in prerecorded $50 bills, Blount and the informant left the building. The entire transaction took approximately 15 minutes.

Blount further testified that on October 15, 1986, he was again in the vicinity of 601 West 142nd Street, this time without the informant, and that he again spoke with defendant, who on that date was accompanied by an unidentified man. Blount asked if he could get the "big package" previously discussed, and the unidentified man conversed with defendant in Spanish and then asked Blount "what [he] was looking for". Blount responded that he wanted 3,000 vials, and that he wished to confirm the price of $24,000. Defendant nodded his head yes, and Blount was told to come back in approximately 20 minutes. When Blount returned, he went into 601 West 142nd Street and up to the second floor, where he met defendant and the other man. After verifying that "everything was okay", Blount approached the door to apartment No. 2B, but defendant motioned him up the stairs and took him into an apartment on the fourth floor. After knocking on a door within the apartment and receiving no answer, defendant looked outside a window and commented that there were too many cars on the street below. Defendant then walked out of the apartment and left the building.

Appellant was arrested on October 23, 1986 across the street from 601 West 142nd Street, where he lived on the sixth floor. He was taken to the DEATF headquarters where Blount identified him as the man he had known as Elvin Rodriguez.

At issue on appeal is the propriety of the admission of Blount's testimony regarding the aborted transaction of October 15, 1986.

The rule is well established that evidence of uncharged

crimes or bad acts must be excluded when offered solely to show an accused's criminal propensity. *(People v Alvino,* 71 NY2d 233, 241.) Of course, such evidence may be admitted when it is probative of a material issue relating to the crime charged, but even in such circumstances the evidence should be excluded if its prejudicial impact outweighs its probative value. *(People v Ventimiglia,* 52 NY2d 350, 359; *People v Allweiss,* 48 NY2d 40, 47.) Under the exceptions to the general rule established in *People v Molineux* (168 NY 264, 293), evidence of uncharged crimes may be relevant to show "(1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; (5) the identity of the person charged with the commission of the crime on trial." While this list is not exhaustive *(People v Jackson,* 39 NY2d 64, 68), our examination of the within record fails to establish any theory under which Blount's testimony regarding the aborted October 15th sale of 3,000 vials of "crack" was properly admitted.

Appellant was charged, in a one-count indictment, with an October 6, 1986 sale of 100 vials of "crack" to an undercover law enforcement agent. We find no basis in this simple and straightforward narcotics transaction, upon which to credit the prosecution's contention on appeal that the events which subsequently occurred, on October 15, 1986, were either necessary to enhance the jury's understanding of, or "inextricably intertwined" with, the sale for which defendant was on trial, or otherwise "essential to proof of the crime in issue". *(People v Crandall,* 67 NY2d 111, 114.)

Although the undercover officer's identification evidence was strengthened by testimony of his having had three separate meetings with the drug dealer named Elvin and identified at trial as appellant, Pastor Ortiz, the testimony regarding the October 15 meeting could readily have been redacted to delete reference to the plan to consummate a sale of 3,000 vials of "crack" for $24,000. *(See, People v Crandall, supra,* at 114.) Redaction would have permitted testimony regarding the third meeting without exposing appellant—who was charged solely with a 100 vial sale—to the potential prejudice of testimony alluding to larger scale narcotics trafficking. The prejudicial impact of such testimony would greatly outweigh the probative identification value in this case, for Blount's identification testimony included his having observed the seller at close distances and in good lighting on two other

occasions, one of which lasted 15 minutes. It should also be noted that the use of the *Molineux* identity exception to permit reference to uncharged crimes is limited to circumstances where a unique modus operandi employed in the crime charged was also utilized in the uncharged acts sought to be admitted. *(People v Bines,* 137 AD2d 431, 432, *lv denied* 71 NY2d 1023.)

With respect to the claim that the conversation about the "big package" would definitively establish identification by confirming that the man meeting with Blount on October 15 was the same man who sold him 100 vials on October 6, an examination of the record makes clear that the would-be seller on October 15 did not in fact acknowledge any prior conversation with Blount or otherwise confirm a previous agreement. Blount's testimony in this regard is as follows: "I asked him—I asked Pastor Ortiz if I would be able to get the big package that we had talked about earlier. The male hispanic that was there spoke in Spanish to Mr. Ortiz and Mr. Ortiz said something back to him in Spanish. The male hispanic then told me that—*asked me what I was looking for and I said 3000 vials that I had talked about earlier with Pastor Ortiz and I wanted to know—I wanted to verify the price as being $24,000.* Pastor Ortiz nodded his head yes that it was $24,000 and for me to come back at approximately—in approximately 20 minutes" (emphasis added).

Rather than confirming a prior discussion, this record indicates that the drug dealer was uncertain as to what Blount was seeking to buy, and that it was Blount who stated the price. Thus, the exchange provides little, if any, evidence to confirm that the man who met with Blount on October 15 was the same man who had sold him 100 vials on October 6.

Finally, we note that the prosecutor did not limit his use of this offending evidence to strengthening identification testimony. Rather, he made several references in summation to an agreement by appellant to provide "3000 vials of crack every Thursday for $24,000". We cannot ignore the highly prejudicial impact of such evidence, particularly when viewed in conjunction with Blount's testimony as to the purpose of the DEATF, which he described as "to target" and "infiltrate [the] organizations" of "higher level narcotics traffick[ers]". Indeed, we recently held in *People v Negron* (136 AD2d 523, 526) that testimony elicited principally "to convey to the jury an inference that defendant was part of an organized drug operation" was so prejudicial as to be inadmissible. Here, as in *Negron*

*(supra,* at 526), " '[t]he evidence introduced should, rather, have focused more sharply on the defendant and the single sale with which he was charged' " (quoting *People v Maldonado,* 50 AD2d 556).

Despite the failure of appellant's trial counsel to interpose specific objection to the introduction of the offending evidence, its admission is an error so substantial that we deem it appropriate to exercise our discretion in the interest of justice and reverse the conviction and remand for a new trial. *(See, People v Negron, supra,* at 526.)

Accordingly, the judgment, Supreme Court, New York County (Harold Rothwax, J.), rendered May 27, 1987, convicting appellant, after a jury trial, of criminal sale of a controlled substance in the second degree (Penal Law § 220.41 [1]), and sentencing him to an indeterminate term of imprisonment of from three years to life, should be reversed, on the law, the facts, and as a matter of discretion in the interest of justice, and the matter remanded for a new trial.

CARRO, J. P., ASCH and SMITH, JJ., concur.

Judgment, Supreme Court, New York County, rendered on May 27, 1987, unanimously reversed, on the law, the facts, and as a matter of discretion in the interest of justice, and the matter remanded for a new trial.