■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALFREDO COLON, Appellant.—Judgment, Supreme Court, New York County (Frank J. Blangiardo, J.), rendered on April 13, 1988, convicting defendant, after a jury trial, of criminal possession of a controlled substance in the fourth degree (Penal Law § 220.09 [1]), and sentencing him as a predicate felony offender to a term of imprisonment of from four to eight years, is affirmed.

Defendant first argues that he was denied a fair trial by reason of evidence introduced on the People's cross examination of defense witnesses which created the impression that he

was involved in a large-scale narcotics trade. Although charged with only a single instance of possessing heroin, not selling it, much evidence was introduced of ongoing and rampant drug selling in the building where defendant was arrested, which indeed could have, and probably did, create the impression that defendant was selling drugs. But the evidence came into the case more as a result of defense counsel's cross examination of the People's witnesses than the prosecutor's cross examination of defense witnesses. On the People's direct case, the prosecutor elicited only that the three police officers who apprehended and arrested defendant were attached to a narcotics unit and assigned to foot patrol duty on East 3rd Street between Avenues C and D, a one block area designated "Narcotics Post 12". This was legitimate background information serving to explain why these officers happened to be nearby when approached by the individual who imparted the information which gave them probable cause to enter the building and search the third-floor apartment out of which defendant bolted. True, the People's first witness, Officer Sullivan, volunteered that the building was known by police, and the crowds of drug users who "hung out" in front of it, to be a "drug-prone location", but an immediate objection by defense counsel was sustained with instructions to the jury "to disregard" that comment. No other questions were asked by the prosecutor on the People's direct case which could have elicited further statements to a like effect, and defendant does not claim reversible error as a result of any evidence introduced by the People on their direct case. Having made an apt objection which surely conveyed to the jury that the buying and selling of drugs in the building was not a relevant circumstance, it is surprising that defense counsel proceeded to cross examine the People's police witnesses in a manner seemingly designed to elicit that drug selling was taking place there. Suffice it to say that as a result of this cross examination emphasis was given to the fact that this particular building was under special and constant observation as a drug-prone location, and that an ongoing uniformed police presence was maintained in front of the building in order to deter the crowds of drug users who congregated outside on the street from going inside and buying drugs. Thus, at the close of the People's case, the jury already knew that rampant drug selling was taking place in the building where defendant was arrested; they also knew that defendant was apprehended with heroin in his possession packaged in containers labelled "Bullet". The only additional

fact concerning the drug trade in the building elicited by the prosecutor on his cross examination of defendant's witnesses was that the heroin sold there was known as "Bullet" to the drug users who would stand on line in the stairway waiting to make their purchases. While this fact certainly connected defendant to the selling activity taking place in the building, the fact was confirmatory in nature, serving only to add detail and emphasis to what the jury already knew from the People's direct case. And, since the jury was instructed that only answers to questions, not the questions themselves, constitute evidence, defendant was not deprived of a fair trial by reason of the "rhetorical questions" put by the prosecutor to one of defendant's witnesses which unsuccessfully sought to elicit an admission that he and other legitimate tenants in the building gave drug pushers, such as defendant, access to their apartments for the purpose of selling drugs.

Nor was defendant deprived of a fair trial by reason of the prosecutor's summation. It was defendant's theory that he was the victim of a frame-up—that the drugs were planted on him by the police and that their account of the events leading up to and ending in his arrest was all a lie. Toward this end, defense counsel, in his own summation, pointed to what he took to be gaps and inconsistencies in the People's account of the incident and to circumstances suggesting that the officers on the scene colluded in their report of the incident. The tenor of the prosecutor's response was that no two witnesses are likely to perceive an emergent, fast-moving situation in exactly the same way; that some inconsistencies and gaps in the account of an incident such as this are natural and to be expected, and even serve to corroborate credibility; and that the inconsistencies and gaps and indications of collusion alluded to by defense counsel were so insubstantial and trivial, so collateral to the issue of possession, as to amount to nothing more than an attempt at deception—a "smokescreen" intended to "mislead", "confuse", and "distract" the jury. Although the defense, as the People concede on appeal, should not have been disparaged in this way, we cannot say that the comments, taken in context, substantially distracted the jury from the credibility issues which defendant wanted considered (see, People v Allen, 121 AD2d 453, 454, affd 69 NY2d 915; People v Roth, 157 AD2d 494, 495); indeed, their effect might very well have been to give those issues even greater focus. It was not improper for the prosecutor to argue, in meeting a claim that his police witnesses had conspired to commit perjury, that they would not "put their jobs on the line" "just

to get this guy"; nor is there merit to defendant's other claims of prosecutorial vouching *(see, People v Knox,* 156 AD2d 254).

Defendant's final argument that the court's "interested witness" instruction should have particularly referred to one of the People's witnesses is unpreserved. Concur—Wallach, Kupferman and Asch, JJ.

Murphy, P. J., and Carro, J., dissent in a memorandum by Carro, J., as follows: I feel obliged to dissent in this case, where the record demonstrates that defendant was technically convicted of criminal possession of a controlled substance, but that he was in reality tried for being part of an organized drug selling scheme in his building. This was a crime with which he was not formally charged, but which became the focus of the People's case.

It is well-settled that "[e]vents antecedent to and independent of a crime, where necessary to explain an ambiguous but material fact in the case, are relevant and may be introduced at trial." *(People v Green,* 35 NY2d 437, 441.) However, in the case at bar, where defendant was merely charged with possession of heroin, there was no call for the introduction of extensive evidence concerning unrelated drug trafficking activity in the building in which defendant was arrested. *(See, People v Ortiz,* 142 AD2d 248, 251; *People v Negron,* 136 AD2d 523, 525-526; *People v Philpot,* 50 AD2d 822, 823.)

This so-called background testimony, none of which was linked to defendant, was elicited over vociferous objection during cross-examination of three defense witnesses, and concerned narcotics activity in defendant's building. Topics included questions as to the number of arrests in the building, testimony that people "are lined up [on the stairway] twenty-four hours a day to buy heroin", further testimony speculating whether the building's drug sellers kept guns in their apartments, and whether apartment dwellers rented out the keys to their apartments for use by pushers when they were not home. As defendant correctly urges, the prosecutor improperly created the impression that defendant was part of a large scale drug-selling operation in the building, thus shifting the focus from a single act of possession to an organized criminal sale enterprise *(People v Negron,* 136 AD2d, *supra,* at 526).

Furthermore, the prosecutor's summation included inappropriate comments which were repeated for emphasis. While some response was appropriate to defense counsel's argument that the police witnesses and a civilian witness were not credible, thrice characterizing the defense as a "smokescreen",

repeating five times that defense counsel sought to "mislead" or "confuse" the jury, and stating on four occasions that the police witnesses had "put their jobs on the line, risking their careers," exceeded the bounds of fair rebuttal. *(People v Diaz, 170 AD2d 202.)*

Accordingly, the judgment of the Supreme Court, New York County (Frank Blangiardo, J.), entered April 13, 1988, convicting defendant after a jury trial of criminal possession of a controlled substance in the fourth degree (Penal Law § 200.09) and sentencing him to an indeterminate period of four to eight years in prison, should be reversed, on the law, and the matter remanded for a new trial.