■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CARLOS ALFONSO, Appellant. [— NYS2d —] —Judgment of the Supreme Court, New York County (Martin H. Rettinger, J.), rendered July 2, 1991, convicting defendant, after jury trial, of criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fourth degree, and sentencing him to concurrent indeterminate terms of imprisonment of from 4½ to 9 years and from 3 to 6 years, respectively, reversed, on the law, and as a matter of discretion in the interest of justice, and the matter remanded for a new trial.

At about 3:00 A.M. on the morning of June 28, 1990, police officers from the 9th Precinct's Street Narcotics Enforcement Unit ("SNEU") set up an observation post on a rooftop near 13th Street and Second Avenue in Manhattan. Through binoculars, Sergeant Mark Laurie observed defendant lingering on the corner of 13th Street and Second Avenue. A man approached defendant and engaged in a brief conversation with him. Defendant then walked about 6 or 7 feet to a parked car, reached down and picked up a brown paper bag from underneath the vehicle. Defendant removed something from the bag and handed it to the other man in exchange for a sum of money.

Sergeant Laurie testified that he transmitted descriptions of the buyer and seller to his back-up team, but they were engaged in making arrests of drug-buyers on First Avenue and unable to respond. Sergeant Laurie witnessed a second sale by defendant, but the back-up team was still unavailable. After observing a third sale, Officer Edwin Murphy of the back-up team responded to Officer Laurie's radio transmission and placed defendant under arrest. The paper bag was recovered and found to contain 51 vials of what was later determined to be cocaine. A search of defendant's person produced only a five-dollar bill. Sergeant Laurie then confirmed that defendant was the individual who made the three sales.

Defendant was charged with single counts of criminal possession of a controlled substance in the third and fourth degrees. The defense presented no case.

On appeal, defendant contends that "it was improper for the prosecutor to elicit, over counsel's numerous protests, testimony regarding the general operation of the model observa-

tion sale, the workings of a buy and bust operation, and that the arrest site was targeted because citizens complained of drug activity in this area. The prosecutor, later, in summation exploited this information by repeatedly arguing that appellant was a professional drug-dealer schooled in the sophisticated techniques of law enforcement."

Defendant's contention that it was improper to elicit testimony regarding the conduct of a model drug-observation operation is not without merit. On direct examination, Sergeant Laurie, who was the 9th Precinct's SNEU supervisor, gave a detailed description of the roles played by the officers on the team, the equipment used, and the modus operandi of the typical drug dealer. He stated that the selection of a site for the operation is determined by complaints about drug sales received from residents and law-enforcement personnel assigned to that area. He explained how the observation-post officer identifies, through binoculars, a person engaged in drug sales based upon "brief conversations; hand-to-hand transactions; the presence of money, the observation of the drug itself —along those lines." He explained what a "stash" is and the distinction between buy and bust and SNEU observation-post operations. In response to the prosecutor's question, Officer Laurie stated, over defense counsel's objection, "The strongest case would be if I recovered both the stash and money."

Sergeant Laurie appeared as a key witness for the prosecution, giving testimony with regard to the events leading to defendant's arrest. By subsequently allowing Sergeant Laurie to testify to various police tactics employed in drug enforcement, the court permitted him, without prior qualification, to testify in the capacity of an expert witness *(People v Sharp,* 163 AD2d 73, *affd* 78 NY2d 914).

The background information provided by Sergeant Laurie was not essential to fill any void in the evidence or to render otherwise incomprehensible testimony more understandable to the jurors *(People v Green,* 35 NY2d 437, 441-442). This case factually resembles *People v Negron* (136 AD2d 523), in which this court reversed the conviction of a defendant arrested after being observed selling drugs by a police officer, positioned on a roof with binoculars. As in that case, the testimony regarding the two other sales witnessed by the Sergeant while he waited for the back-up team to respond, constitutes evidence of uncharged crimes, and the testimony regarding the practices of drug dealers served the purpose of focusing the attention of the jury on the narcotics trade in general *(see also, People v Soto,* 172 AD2d 355). Furthermore, in the course

of summation, the prosecutor compounded the prejudicial effect of Sergeant Laurie's testimony by characterizing defendant as a "pro" who was on a street, late at night, occupied only by persons engaged in the buying and selling of crack (see, People v Philpot, 50 AD2d 822) and who possessed sufficient expertise in selling drugs to carry a "safe" five-dollar bill in his pocket (that is, a bill which has not been prerecorded by the police).

The prejudicial effect of the testimony outweighed any probative value, and it should not have been admitted (People v Alvino, 71 NY2d 233, 242 [uncharged crimes]; People v Crosby, 51 AD2d 902 [propensity to deal in narcotics]). While defense counsel did not specifically object to the introduction of evidence of uncharged crimes and the issue is thus not preserved for appellate review (CPL 470.05 [2]; People v Iannelli, 69 NY2d 684, cert denied 482 US 914), the cumulative effect of the errors is sufficiently substantial to warrant reversal in the interest of justice (People v Jones, 81 AD2d 22, 42). Concur—Carro, Rosenberger and Rubin, JJ.

Sullivan, J. P., and Kupferman, J., dissent in a memorandum by Kupferman, J., as follows: Inasmuch as the defendant was arrested based on an observation post officer's identification, the limited background information supplied by Sergeant Laurie was properly admitted to provide the jury with an understanding of the techniques used by officers involved in observation post operations as they relate to the apprehension of street drug sellers (cf., People v Almodovar, 178 AD2d 133, lv denied 79 NY2d 943). In addition, the testimony was probative of a material fact urged by the People (see, People v Tucker, 102 AD2d 535, 537), namely, that defendant, as an experienced street drug seller, took measures to avoid apprehension with drugs or "marked money" on his person. Moreover, the sergeant's brief reference to the fact that the site of an observation post operation is selected based on complaints of drug sales properly explained the officers' presence in the area and their conduct leading up to defendant's arrest, and should not be viewed as linking defendant to general drug activity (see, People v Adams, 184 AD2d 227, lv denied 80 NY2d 926).

Finally, defense counsel not having objected to the introduction of evidence of uncharged crimes, the issue is not preserved for appellate review (CPL 470.05 [2]; People v Iannelli, 69 NY2d 684, cert denied 482 US 914), and there is no interest of justice situation to warrant our reaching out to reverse.