■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT REINAT, Appellant. [707 NYS2d 181] —Appeal by the defendant from a judgment of the Supreme Court, Kings County (Carroll, J.), rendered June 10, 1997, convicting him of criminal sale of a controlled substance in or near school grounds, criminal sale of a controlled substance in the third degree, and criminal possession of a controlled substance in the third degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law and as a matter of discretion in the interest of justice, and a new trial is ordered.

The defendant was arrested during a so-called buy-and-bust operation in Brooklyn after he was identified by an undercover officer as the seller from whom he had purchased three glassine envelopes containing "Show Time" heroin in exchange for $30 in prerecorded money, some five minutes earlier. The arresting officer searched the defendant and found 20 glassine envelopes of heroin stamped "Feel Good" in the defendant's right front pants pocket. The prerecorded money was not recovered.

At trial, the People's first witness was the supervising officer in charge of the buy-and-bust operation who was permitted to testify as an expert witness that the prerecorded money is recovered in only 45% to 55% of buy-and-bust operations, that sellers do not always operate alone but rely on other persons such as "steerers", "lookouts", "money men" who take the money, and "re-up men" who resupply the sellers with drugs, and that the "money man" or "re-up man" may be a woman. The supervising officer had observed a woman "in the vicinity" when he first saw the defendant in the park on the night in question. The arresting officer also testified that there was a woman "in close proximity". Neither of these officers had questioned or searched the woman. The arresting officer stated that he had no reason to believe that the woman was a buyer or was working with the seller, and the supervising officer stated that he doubted that the woman was a "steerer", a "point-man", a "money man", or a "lookout".

In summation, the prosecutor argued that the People did not have to establish the exact time when the defendant got rid of the prerecorded money, but that "common sense will tell you" that there was a period of four or five minutes between the sale and the arrest during which the defendant was not being observed by the police. The prosecutor noted that when the arresting officer arrived, the defendant was with a woman, adding: "Now, we'll never know for sure what that woman had on her, but you can use your common sense". The prosecutor emphasized that although the supervising officer had been asked specifically whether he thought the woman was a "steerer", a "point-man", a "money man", or a "lookout", defense counsel did not ask the witness whether she might have been a "re-up man". Continuing, the prosecutor commented, "[a]nd I submit to you she was. Think about that. That's what she was. The money was gone and [the defendant] had a new supply [of drugs]".

The trial court improperly admitted the expert testimony of the supervising officer (*see, People v Bethea,* 261 AD2d 629, 630; *People v Colon,* 238 AD2d 18, 21). Here, no evidence was elicited at trial from which it could be inferred that the woman seen standing near the defendant at the time of his arrest was involved in the drug transaction. Accordingly, the introduction of the testimony regarding the percentage of cases in which the prerecorded buy money is not found on the seller and the variety of roles common to street-level drug sales invited the jury to speculate, without any factual basis, that the unidentified woman had assisted the defendant. The prejudicial effect of this error was compounded by the prosecutor's comments during summation in which he argued that the woman was indeed a "re-up man", which would explain why the defendant possessed a different "brand" of heroin than that which he had allegedly sold to the undercover officer (*see, People v Figueroa,* 211 AD2d 811; *People v Alfonso,* 194 AD2d 358). The error was not harmless (*see, People v Crimmins,* 36 NY2d 230, 241-242).

In view of our determination that there should be a new trial, we do not address the defendant's remaining contentions. Should the issue of courtroom closure arise upon retrial, the trial court will determine the measures that may be required to protect the undercover officer's identity based on the appropriate criteria as applicable to the officer's circumstances at that time. O'Brien, J. P., Thompson, S. Miller and H. Miller, JJ., concur.