[821 NE2d 108, 787 NYS2d 683]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RENE RESEK, Appellant.

Argued October 21, 2004; decided November 23, 2004

### POINTS OF COUNSEL

*Office of the Appellate Defender,* New York City (*Richard M. Greenberg* of counsel), for appellant. I. Rene Resek was denied his constitutional rights to a fair trial and due process of law where the trial court allowed the admission of evidence of a crime—possession of a stolen automobile—that was irrelevant to the charged crime and that previously had been considered and dismissed by the grand jury. (*People v Till,* 87 NY2d 835; *People v Hudy,* 73 NY2d 40; *People v Alvino,* 71 NY2d 233; *People v Beam,* 57 NY2d 241; *People v Allweiss,* 48 NY2d 40; *People v Ely,* 68 NY2d 520; *People v Ventimiglia,* 52 NY2d 350; *People v Molineux,* 168 NY 264; *People v Vails,* 43 NY2d 364; *People v Tosca,* 98 NY2d 660.) II. Detective Dailey's expert testimony that an individual who, like Rene Resek, possesses 23 glassine envelopes of heroin is "probably a dealer" improperly and unfairly usurped the jury's function with respect to the ultimate issue in the case and rendered the trial fundamentally unfair. (*People v Brown,* 97 NY2d 500; *People v Lee,* 96 NY2d 157; *People v Taylor,* 75 NY2d 277; *People v Cronin,* 60 NY2d 430; *Van Wycklyn v City of Brooklyn,* 118 NY 424; *People v Ingram,* 2 AD3d 211; *People v Tarver,* 292 AD2d 110, 98 NY2d 702; *People v Wright,* 283 AD2d 712; *People v Pratt,* 266 AD2d 318; *People v Lamont,* 227 AD2d 873.)

*Robert M. Morgenthau, District Attorney,* New York City (*Walter J. Storey* and *Donald J. Siewert* of counsel), for respondent. I. Defendant has failed to preserve his contention that Justice Cropper deprived him of his constitutional rights by admitting evidence that he was arrested in a stolen car. On the merits, Justice Cropper did not abuse her discretion in admitting the evidence at issue: it explained the police conduct leading to defendant's arrest, and the Judge delivered clear and

forceful instructions limiting the jury's consideration of the evidence to that issue alone. (*People v Stephens,* 84 NY2d 990; *People v Iannelli,* 69 NY2d 684; *People v Santiago,* 52 NY2d 865; *People v Alvino,* 71 NY2d 233; *People v Ventimiglia,* 52 NY2d 350; *People v Vails,* 43 NY2d 364; *People v Molineux,* 168 NY 264; *People v Till,* 87 NY2d 835; *People v Montanez,* 41 NY2d 53; *People v Gines,* 36 NY2d 932.) II. Defendant has failed to preserve his challenge to a police expert's testimony that a person who possesses 23 glassines of heroin is "probably a dealer." In any case, the expert's testimony was helpful to the jury and did not remove the issue of defendant's intent from the jury. Any error in the witness's testimony was harmless. (*People v Patterson,* 39 NY2d 288, 432 US 197; *People v Graves,* 85 NY2d 1024; *People v Garcia,* 83 NY2d 817; *People v Tevaha,* 84 NY2d 879; *People v Harris,* 98 NY2d 452; *People v Padro,* 75 NY2d 820; *People v Taylor,* 75 NY2d 277; *People v Cronin,* 60 NY2d 430; *People v Hicks,* 2 NY3d 750; *People v Lee,* 96 NY2d 157.)

**OPINION OF THE COURT**

ROSENBLATT, J.

Defendant was convicted of criminal possession of a controlled substance with intent to sell, based in part on a search of the car he was driving. To enable the prosecution to explain why defendant was arrested, the trial court allowed police officers to testify that they had monitored the vehicle, based on a report that it was stolen. In fact, and unbeknownst to the trial jury, the grand jury had refused to indict defendant for possession of a stolen car. Under the circumstances, the testimony relating to defendant's possession of a stolen car deprived him of a fair trial.

I.

While conducting surveillance of a reportedly stolen car, police saw defendant enter the vehicle and drive off. They followed and arrested him when he stopped at a gas station. During an inventory search of the car, police recovered nine glassines of heroin from the glove compartment and 14 more when searching defendant at the station house. Based on his possession of the 23 glassines of heroin, a grand jury indicted defendant for criminal possession of a controlled substance with intent to sell, but dismissed the charge of criminal possession of a stolen car.

Before jury selection, the prosecution asked the court to permit the arresting officers to testify as to why they arrested

defendant. The prosecutor asserted that if this evidence was kept from the jury, it might speculate that the police simply accosted defendant for no reason. Defendant (initially proceeding pro se) objected, arguing that the grand jury had "acquitted" him of charges relating to the stolen car and that introducing those charges at trial would be prejudicial. Agreeing with the prosecution, the court ruled that it was entitled to introduce evidence of the allegation of the stolen car to explain the actions of the police. Defendant's attorney pressed the objection, again pointing out that the grand jury dismissed the stolen car charges. The court, however, adhered to its ruling after reciting its proposed limiting instruction, telling defendant's attorney that "[y]ou have an exception."

At trial, when the court reaffirmed its intention to allow evidence as to the stolen car, defendant's attorney again objected, stating, "And I just voice my prior objection to including uncharged crimes as evidence before the jury when they are not probative of the crime before the court, that being whether or not—." At that point, the court cut him off, reiterating its position and stating, "Well, counsel you have your exception and you can have it as many times as you want."[1]

After the testimony of one of the police officers, the court instructed the jury that it could consider the evidence as to the stolen car only to explain the action of the officers. Moreover, even though it had been made aware that the grand jury had dismissed the stolen property charge against defendant, the court gave a "limiting" instruction to the jury that "[i]t is not in any way to be inferred by you that the *defendant did or did not steal the car* or anything of the kind." (Emphasis added.) The jury found defendant guilty and a divided Appellate Division affirmed. A Justice of the Appellate Division granted leave to appeal to this Court, and we now reverse.

In *People v Tosca* (98 NY2d 660 [2002]), we held that the trial court did not abuse its discretion in admitting the police officers' testimony concerning an unidentified cab driver's report of

---

1. [2] Given defendant's persistent and pointed protests, we cannot agree with the dissenters that defendant did not preserve his claim. After the court assured the defense that it had an exception (in what sounded very much like exasperation or a rebuke to desist in pressing the point for a *fourth* time), it is difficult to imagine what more defendant could have done. We will not impose a preservation rule so extreme that defendant, to succeed, would have to antagonize the court or test its patience even further. Such a rule would do nothing to advance the objectives of our preservation doctrine.

a recent (uncharged) encounter with the armed defendant. The trial court allowed the testimony not for its truth but—as in the case before us—to explain how and why the police pursued and confronted the defendant. Similarly, in *People v Till* (87 NY2d 835 [1995]), evidence of an uncharged robbery served to establish a motive for the defendant's attempt to kill or assault the off-duty police officer and thus avoid capture. These cases and others like them may justify this type of evidence, in the court's discretion.

Under certain circumstances, and when coupled with proper limiting instructions, testimony of this kind may fill in gaps in "interwoven events" (*id.* at 837) and thus help the jury understand the case in context. But it is a delicate business, and there is the danger that uncharged crime testimony may improperly divert the jury from the case at hand or introduce more prejudice than evidentiary value (*see generally People v Rojas*, 97 NY2d 32, 37 [2001]). Here, in contrast to *Tosca* and *Till*, the prejudice to defendant outweighed the probative value of the evidence. Admission of the testimony under these circumstances was therefore error.

In seeking to introduce the stolen car testimony, the People pointed out that unless the jurors knew why the police arrested defendant, they might conclude that the police wrongfully targeted him or otherwise abused their authority. This was a legitimate concern, but by allowing the evidence to be given over objection and in the one-sided form requested by the prosecution, the court left the jury with an incomplete and prejudicial narrative. This was reversible error and was not ameliorated by the court's limiting instruction. Indeed, the instruction made matters worse. Rather than simply reveal to the jury that the grand jury dismissed the charge for possession of a stolen car, the court told the jurors that they should not infer that defendant did or did not steal the car. The case before us is thus critically different from *Tosca* and *Till*. There was nothing in either of those cases to suggest that the defendant was cleared of the uncharged crime.

Our dissenting colleagues contend that the trial court acted within its discretion in allowing the stolen car testimony "to complete the narrative." (Dissenting op at 391.) While in a *Molineux* context we have used this phrase in several cases (*People*

*v Molineux,* 168 NY 264 [1901]),[2] these decisions should not be interpreted as automatically allowing the prosecution to introduce evidence of uncharged crimes merely because the evidence is said to complete the narrative or furnish background information. On the contrary, under our *Molineux* jurisprudence, we begin with the premise that uncharged crimes are inadmissible and, from there, carve out exceptions (*see People v Rojas,* 97 NY2d 32 [2001]; *see also* Prince, Richardson on Evidence §§ 4-501—4-516, at 175-194 [Farrell 11th ed 1995]).

In appropriate instances, evidence of uncharged crimes may be allowable as background or narrative because juries might "wander helpless" trying to sort out ambiguous but material facts (*People v Green,* 35 NY2d 437, 441 [1974]). Here, however, there was no ambiguity that could not have been easily dealt with by far less prejudicial means. In order to allay the prosecutor's concern that the jury might, without guidance, stray from its appointed task, it would have sufficed to instruct the jurors that the arrest was lawful and that they were not to speculate as to its reasons. Of course, if defendant had placed the propriety of the police action in issue, the events leading up to his arrest ought properly have been admitted to rebut the claim. Here, however, defendant conceded his possession of the recovered drugs he was charged with intending to sell.

Our result is congruent with cases in which we have held that uncharged crimes, although used to complete the narrative, were too prejudicial to be admitted (*see, e.g., People v Cook,* 42 NY2d 204 [1977]; *People v Stanard,* 32 NY2d 143 [1973]). We are unable to accept the dissent's view that the trial court properly chose to "inform jurors about the underlying facts and circumstances" with detailed instructions on the limited purpose of the evidence (dissenting op at 391). Had the narrative in fact been completed, and the trial court told the jury *all* of the facts and circumstances, the jury would have learned that the grand jury cleared defendant of the stolen car charge.

Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.

---

2. We used this language for the first time in *People v Gines* (36 NY2d 932, 932 [1975]), followed by *People v Cook* (42 NY2d 204, 208 [1977]) and most recently in *People v Till* (87 NY2d 835, 837 [1995]). In other cases we referred to the concept using words like "background material" or "background information" (*see, e.g., People v Montanez,* 41 NY2d 53, 58 [1976]; *People v Green,* 35 NY2d 437, 442 [1974]; *People v Stanard,* 32 NY2d 143, 147 [1973]; *People v Tosca,* 98 NY2d 660, 661 [2002]).

GRAFFEO, J. (dissenting). Our recent decisions in *People v Tosca* (98 NY2d 660 [2002]) and *People v Till* (87 NY2d 835 [1995]) illustrate that, in some circumstances, a trial court has the discretion to admit evidence of uncharged crimes closely related to the charges levied to provide the jury with necessary background information or to complete the narrative of relevant events if the probative value of such evidence exceeds its potential for prejudice. Discretion, by its very nature, provides a court with the flexibility to choose among viable alternative courses of action after considering relevant facts and circumstances with due regard for fundamental fairness to the accused. The trial court in this case faced a dilemma—suppress evidence that defendant possessed a stolen vehicle, which would possibly encourage speculation among the jury regarding the reason the police initially approached defendant, or inform jurors about the underlying facts and circumstances with detailed instructions on the limited purpose being served by the evidence. The court in this case, as we approved in *Tosca* and *Till*, chose the latter option. Under our precedent, that decision was not an abuse of discretion. I therefore dissent and would affirm the order of the Appellate Division.

My disagreement with the majority stems not from its view of the facts but from its failure to recognize that the outcome of this case is controlled by our decision in *People v Tosca* (98 NY2d 660 [2002]). There, the defendant was arrested for criminal possession of a weapon after the driver of a taxicab alerted the police that he had seen a handgun protruding from the defendant's waist when he tried to hail the cab. During the trial, the People were allowed to introduce evidence of this encounter in order to give the jury an explanation for why the police initially approached the defendant. We found no error by the trial court because "[t]he testimony was admitted not for its truth, but to provide background information as to how and why the police pursued and confronted [the] defendant" (*id.* at 661). We also noted that the jury had been instructed twice "on the limited use it could make of the testimony and that the testimony was not to be considered proof of the uncharged crime" (*id.*).[1]

The facts of this case are parallel in all relevant respects. As in *Tosca*, the trial court in this case admitted evidence that de-

---

**1.** One of the instructions in *Tosca* informed the jury that the evidence was:

"offered solely for the purpose of giving you the full story of the events as they unfolded or completing the narrative as to pos-

fendant was driving a stolen car in order to explain the actions of the police and thereby prevent the jury from speculating that he may have been approached and arrested without adequate justification. Here, too, the jury was twice instructed on the limited purpose for which the testimony was being admitted. The first instruction, issued immediately after the People's opening statement, informed the jury that the evidence would be admitted "for only one purpose and that is to explain whatever it is the police officer said he did thereafter, but there may be no inference whatever against the accused with respect to the theft of the car, whether it was stolen or anything of the sort." The second limiting instruction was given during the testimony of one of the police officers and reiterated that:

> "the only purpose of the evidence that you have heard here with respect to the stolen vehicle is to explain the action of this officer with respect to that. It is not in any way to be inferred by you that the defendant did or did not steal the car or anything of the kind. It is not for that purpose. You may not draw any inferences whatever from it. The only weight that you may give it is whether or not it adequately explains the actions taken by the police thereafter."[2]

Despite the fact that defendant objected to the introduction of the factual background information at the outset of the trial, the record indicates that defendant was satisfied with the cautionary instructions provided to the jury. At no time did he object to either instruction, ask the court to supplement its instructions with more detailed language or seek to substitute another corrective charge. The defense also did not request any further clarification regarding the stolen vehicle in the judge's final charge to the jury. In the absence of a timely and specific request or objection to the instruction by defendant, it is unnecessary to reverse the conviction solely on an unpreserved argument regarding the adequacy of jury instructions (*see People v*

---

sibly explain why the police focused on the defendant, chased him, and ultimately arrested him.

"I charge you that such evidence may be considered by you only for this limited purpose and nothing else. It is not offered to show that the defendant [ ], in fact, had a dispute or altercation or any contact with a taxicab driver."

**2.** Nor did the trial court's efforts to ameliorate any prejudice to defendant cease at this point; the court also ordered that all references to the stolen car be redacted from defendant's statement to the police.

*Whalen,* 59 NY2d 273, 280 [1983]; *People v Santiago,* 52 NY2d 865, 866 [1981]).[3]

Nor do I see evidence in the record that the jury was "divert[ed]" (majority op at 389) from the charges defendant was facing or that defendant was unduly prejudiced by the actions of the trial court. The record in *Tosca* had the potential for greater prejudice to the defense than the case before us. At trial in *Tosca,* the People were permitted to characterize the defendant's encounter with the taxi driver as an "attempted robbery." Critically, however, there was nothing to suggest that Tosca actually had attempted to rob the taxicab driver—there was no evidence to indicate that the taxicab driver had been threatened with the firearm or that the defendant had tried to procure the driver's property, and Tosca was not charged with robbery or any other crime arising from the interaction with the taxi driver. We affirmed Tosca's conviction even though his jury was not told that he had been (to use the majority's terminology) "cleared" of the robbery (majority op at 389).

The majority's attempt to distinguish *People v Till* (87 NY2d 835 [1995]) is similarly unpersuasive. Charged with the attempted murder of a police officer, the defendant in *Till* challenged the admission of evidence regarding a series of robberies he allegedly committed, which had led to the confrontation with the police officer. Although Till was originally indicted for the robberies and the attempted murder, the People ultimately obtained a superceding indictment that did not charge robbery. The jury was not informed that the defendant had not been indicted for robbery by the second grand jury. Yet we found no error because the trial court twice cautioned the jury that "the uncharged robbery testimony was provided to it solely 'for the purpose of background information' and 'for the continuity of the events' and was not to be considered as proof of the crimes at issue" (*id.* at 837).

Those instructions, as in *Tosca,* are materially similar to the cautionary language utilized by the trial court in this case. No compelling justification has been advanced by the majority for its conclusion that the *Till* jury did not have to be told about

---

3. The majority misunderstands my posture on this issue. I agree that defendant preserved his objection to the introduction of the uncharged crime evidence. What he did not challenge were the limiting instructions issued by the trial court. As such, the propriety of those instructions is a question that is not properly before us, as our jurisdictional precedent establishes (*see Whalen,* 59 NY2d at 280; *Santiago,* 52 NY2d at 866).

the outcome of the grand jury proceeding but that the jury in this case should have been even in the absence of such a request by defendant. In the end, *Till*, like *Tosca*, supports the trial court's exercise of discretion and, in this case, undermines defendant's claim that he was deprived of a fair trial.

I disagree with the majority's conclusion that the situations in *People v Cook* (42 NY2d 204 [1977]) and *People v Stanard* (32 NY2d 143 [1973]) are "congruent" (majority op at 390) to the evidentiary determination in this case. To the contrary, in the residential burglary prosecution in *Cook*, the People introduced evidence that the defendant, one of three intruders, had exposed himself to the female victim and sexually assaulted her. We determined that "the prosecution . . . transcend[ed] legitimate bounds by probing the lurid and intimate details of the uncharged sex crime" because "there [wa]s no indication in the record, apart from the prosecutor's totally unfounded and highly improper suggestions on summation, that Cook was the individual who sexually abused" the victim (42 NY2d at 208-209). Here, of course, no claim is made that defendant was misidentified as the person who had been driving the stolen vehicle.

The perjury prosecution of a police officer in *Stanard* relied on extensive testimony by a fellow officer, Frank Serpico, whose testimony "embroiled the defendant and other officers in corruption involving a number of . . . specific transactions with specific gamblers at specific times and places" that were not remotely involved with the pending charges involving false statements to a grand jury (32 NY2d at 145-146). We reversed the defendant's conviction because Serpico's testimony of widespread, systemic police corruption, "none of which had any relevancy to the perjury charges . . . added facts involving the defendant and others in a web of activity which could only be considered by the jury reprehensible, resulting in the perjury testimony becoming only background for the evidence of police corruption" (*id.* at 147). In contrast to the record in this case, it cannot be said that the admission of the police officer's testimony referring to the stolen car was so prejudicial that the trial court exceeded the permissible boundaries of discretion. Thus, the prejudicial effect of the uncharged crime evidence in *Cook* and *Stanard* far exceeded the prejudicial potential of the testimony that was introduced in this case.

I further reject defendant's contention that the trial court abused its discretion by allowing a police officer to testify as an expert on the packaging and quantity of the narcotics recovered

from defendant. It is now settled that, in an appropriate case such as this, the People may introduce expert testimony to inform the jury about facts and circumstances indicative of an intent to sell drugs (*see People v Hicks*, 2 NY3d 750, 751 [2004]). In addition, to the extent defendant now complains that the expert's testimony strayed impermissibly into the "ultimate issue" in the case (whether defendant intended to sell or personally use the drugs), that argument was not preserved at trial (*see generally People v Everson*, 100 NY2d 609, 610 [2003]). Accordingly, in the absence of error by the trial court, defendant received a fair trial and his conviction should be upheld.[4]

Chief Judge KAYE and Judges G.B. SMITH and CIPARICK concur with Judge ROSENBLATT; Judge GRAFFEO dissents and votes to affirm in a separate opinion in which Judges READ and R.S. SMITH concur.

Order reversed, etc.

---

4. One final comment is necessary. The erroneous admission of uncharged crimes evidence does not necessarily require a new trial. Rather, such an error is amenable to harmless error analysis (*see e.g. People v Ventimiglia*, 52 NY2d 350, 361 [1981]; *People v Cook*, 42 NY2d at 208-209). The majority has apparently dispensed with harmless error analysis in this case.