People v Woody (2023 NY Slip Op 01263)

People v Woody

2023 NY Slip Op 01263

Decided on March 14, 2023

Appellate Division, First Department

GESMER, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: March 14, 2023
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick
Sallie Manzanet-Daniels Ellen Gesmer Tanya R. Kennedy Martin Shulman

Index No. 3244/18 Appeal No. 16810 Case No. 2020-00272 

[*1]People of the State of New York, Respondent,
v
Keith Woody, Defendant-Appellant.

Defendant appeals from a judgment of the Supreme Court, New York County (Althea E. Drysdale, J.), rendered on September 23, 2019, as amended October 16, 2019, convicting him, after a jury trial, of burglary in the second and third degrees and resisting arrest, and sentencing him as a second violent felony offender to an aggregate term of seven years.

Caprice R. Jenerson, Office of the Appellate Defender, New York (Joseph M. Nursey of counsel), for appellant.
Alvin L. Bragg, Jr., District Attorney, New York (Jillian Lewis and Rachel Bond of counsel), for respondent.

GESMER, J. 

We reverse defendant's conviction because the trial court's ruling on the People's Molineux application deprived defendant of a fair trial as the evidence admitted was solely relevant to defendant's propensity to commit a crime. Facts
On May 19, 2016, defendant was convicted of attempted criminal possession of a weapon in the second degree for possessing a firearm (Penal Law §§ 110; 265.03[1][b]). On April 11, 2018, defendant was released to parole supervision in connection with that offense. However, defendant failed to comply with the terms of his parole, resulting in the issuance of a parole warrant for his arrest on July 6, 2018.
On July 16, 2018, at approximately 2:50 p.m., Detective Anthony Lafemina and Officer Kyle Murcott were sitting in a marked police car in uniform when they observed defendant on the street. Lafemina was aware of defendant's prior firearm conviction and the parole warrant for his arrest. From approximately 10 feet away, Lafemina saw a bulge in defendant's right pocket, which he later testified was "indicative of a firearm." Lafemina exited the car to arrest defendant, who ran away. Lafemina and Murcott pursued him on foot. Lafemina requested backup over the radio, stating that defendant might be armed. 
During the chase, defendant ran into and exited two buildings. In response to Lafemina's radio transmission that defendant might possess a firearm, approximately 100 officers arrived at the location and assisted Lafemina and Murcott in searching for and arresting defendant. Defendant was arrested but no firearm was recovered. Defendant was charged with second-degree burglary, third-degree burglary and resisting arrest, all based on his entry into the two buildings.
Before the trial, the People made a Molineux application (People v Molineux, 168 NY 264, 291—292 [1901]) seeking leave to admit evidence of defendant's prior firearm conviction at trial. The People asserted that this would provide the jury with necessary context to understand: (1) the basis for Lafemina's belief that defendant possessed a firearm; and (2) the extraordinary police response. Defendant opposed the application, arguing that evidence of his prior conviction would not explain the police response, given that there was no evidence that any of the 100 officers who arrived to search for defendant were aware of his prior conviction. Defendant further asserted that [*2]the prior gun conviction was not close in time to the current incident and had no connection to his arrest on the parole violation. Finally, defendant noted that the People would still be able to present evidence that defendant was on parole and that Lafemina had observed a bulge in defendant's pocket, although defendant argued, that if they did so,
"[w]hether he was right or wrong, I believe, is perfectly proper for me to be able to cross-examine him on. I believe it's perfectly proper for me to tell the jury, in my summation, that I think he overreacted, and that he was wrong about Mr. Woody being armed, because there is no allegation that any firearm was ever recovered in this case."
Defense counsel further noted that, in this case, "the People would be free to argue [i]n their summation" that the "bulge. . . and [defendant's] running" formed a valid basis for Lafemina's belief that defendant was armed.
In its decision and order dated August 6, 2019, the motion court granted the People's Molineux application to the extent of permitting them "to elicit brief . . . testimony about the defendant's prior conviction for attempted criminal possession of a weapon in the second degree." The motion court further permitted "defendant to raise the issue of the propriety of police action." The court relied on People v Santana (16 AD3d 346, 346 [1st Dept 2005], lv denied 5 NY3d 794 [2005]), stating that it was permitting the People to use evidence of defendant's prior conviction "to explain police actions, since the court allowed the defendant to raise an issue as to the propriety of the police conduct."
At trial, the prosecutor mentioned defendant's conviction both in his opening statement and summation, and Lafemina testified about it during direct examination. Defendant did not present any evidence at trial. The trial court instructed the jury that evidence regarding defendant's prior gun conviction "must not be considered for the purpose of proving that defendant had a propensity . . . to commit the crime charged in this case. It was offered as background information . . . about why [] Lafemina took his course of action." Analysis
Evidence of prior crimes cannot be admitted to show that a defendant possesses the propensity to commit the crime charged (Molineux, 168 NY at 291—292). Evidence of a prior crime may be admissible when it is relevant to a specific material issue in the case other than defendant's criminal propensity (id. at 293—294), including, but not limited to, motive, intent, absence of mistake or accident, common scheme or plan, and identity of the person charged (People v Dorm, 12 NY3d 16, 19 [2009]).
In addition, Molineux evidence may be admissible as "necessary background material when relevant to a contested issue in the case . . . or to complete the narrative of the events . . . if such evidence is 'inextricably interwoven' with the crime charged" (People v Foster, 295 AD2d 110, 112 [2002] [internal citations omitted], lv denied [*3]98 NY2d 210 [2002]), provided that it is not "unnecessary to the People's case . . . or merely cumulative" (People v Ely, 68 NY2d 520, 529—530 [1986]). "This exception is generally applicable where there is some need to . . . flesh out the narrative so that there are no gaps in the story line . . ." (People v Leonard, 29 NY3d 1, 7 [2017]). Whether evidence of a prior crime is relevant to a specific material issue other than propensity is a question of law, not discretion (People v Alvino, 71 NY2d 233, 242 [1987]).
If the court finds that the proffered evidence is material and relevant for a non propensity purpose, "admissibility turns on the discretionary balancing of the probative value and the need for the evidence against the potential for delay, surprise and prejudice" (id. [internal citation omitted]; see also Dorm, 12 NY3d at 19). Determining whether to admit Molineux evidence for the purpose of background or narrative completion "is a delicate business, and there is the danger that [the evidence] may improperly divert the jury from the case at hand or introduce more prejudice than evidentiary value" (People v Resek, 3 NY3d 385, 389 [2004]). The court must begin with the premise that such evidence is inadmissible. Even if the court determines that the proffered evidence could clarify a relevant fact to the jury, the court must determine, before admitting it, that "there was no ambiguity that could not have been easily dealt with by far less prejudicial means" (Resek, 3 NY3d at 390). This balancing is reviewed for abuse of discretion (Alvino, 71 NY2d at 241).
However, where a defendant "opens the door" to Molineux evidence, the court need not find that it is relevant to a material issue in the case other than propensity or that its probative value outweighs any potential prejudice (People v Rojas, 97 NY2d 32, 36—39 [2001]; see also People v Santana, 16 AD3d at 346; People v Swaby, 2 AD3d 104, 104 [1st Dept 2003]). In the instant case, defendant did not open the door.
Here, on the erroneous theory that defendant opened the door, the trial court admitted evidence that defendant was previously convicted of second-degree attempted criminal possession of a weapon ostensibly to explain Lafemina's actions on the day defendant was arrested. We find this was improper. The trial court should have, but failed to follow the necessary two-step Molineux test: first, determine whether the evidence is relevant to a material issue, and then, if so, whether its probative value outweighs any potential prejudice to defendant. Instead, the court improperly relied on Santana, which does not apply here because defendant never opened the door.
In Santana, the motion court conditionally denied the prosecutor's application to admit the defendant's criminal history for the purpose of explaining the high-speed car pursuit and arrest of the defendant unless the defendant "opened the door."[FN1] In the face of the conditional ruling, Santana's counsel "opened the door[*4]" by cross-examining the People's witnesses concerning the propriety of the dangerous high-speed car chase that the police used in the arrest of the defendant (id.). The trial court then allowed the prosecution to introduce limited information about the defendant's criminal history to show that Santana posed a sufficient danger that the high-speed chase was justified (id.).
In contrast, here, the trial court did not issue a conditional order. Instead, it merely granted the People's application. Therefore, Santana does not apply because defendant did not "open the door." The court erred by granting the People's application before defendant raised any issues as to the propriety of the officers' conduct or as to the accuracy of Lafemina's belief that defendant was armed (see Resek, 3 NY3d at 390 ["if defendant had placed the propriety of the police action in issue, the events leading up to his arrest ought properly have been admitted to rebut the claim"]; Foster, 295 AD2d at 113 [finding an error to admit circumstantial evidence of uncharged pickpocketing theft solely to complete the narrative of what led up to the defendant's arrest; defense did not challenge officer's credibility or propriety of arrest]).
We reject the People's argument that defense counsel opened the door when he announced pretrial that he might argue the propriety of the police actions or the accuracy of Lafemina's belief that defendant possessed a firearm. By doing so, defense counsel did not open the door, for two reasons. First, counsel did not make an affirmative declaration he would do so. Second, he argued that, if he did, the People could bolster Lafemina's credibility by citing the evidence of the bulge in defendant's clothing and his running without using his prior conviction. The motion court granted the People's application to introduce defendant's prior gun conviction in anticipation that defendant would challenge the propriety of the police actions.[FN2] The record does not reflect that defense counsel stated that he would challenge the officers' response or Lafemina's credibility regardless of the admission of evidence of defendant's prior gun conviction nor did the motion court clarify defendant's position. In other words, the motion court's ruling tied defendant's hands by depriving him of his trial choice. It is improper for a trial court to require or indirectly require a defendant to challenge the veracity of a witness or the propriety of the police actions here (see generally People v Ellis, 62 AD2d 469, 471 [1st Dept 1978]["It is not for the Trial Justice, no matter how well motivated, to usurp the role of counsel for either side in a criminal trial because of the court's conception as to how the case should be presented"]; see also People v Helms, 243 AD 818, 818 [2d Dept 1935][reversing the defendant's conviction on the ground that the defendant was improperly prevented from presenting the testimony of character witnesses]). To read Santana, as the prosecution [*5]does, to stand for the proposition that a defendant's criminal history is automatically admissible in cases involving pursuit when an officer's knowledge of a defendant's criminal history plays a part in justifying the pursuit vitiates the requirement that the court must first determine whether the proffered evidence is both relevant to a specific material issue and necessary, rather than merely cumulative and/or prejudicial. Instead, Santana is consistent with other cases in which the admission of Molineux evidence was an appropriate and necessary response to defendant's trial strategy which opened the door (see e.g. Rojas, 97 NY2d at 36—39 [in prosecution for assault on a prison guard, the court held that the defendant opened the door to evidence of his prior assault on an inmate when he used the court's initial exclusion of that evidence as a "sword," by mischaracterizing the purpose of his being held in solitary confinement]; see also Swaby, 2 AD3d at 104; People v Castaneda, 173 AD 2d 349, 350 [1st Dept 1991]["Evidence of uncharged criminal or immoral conduct may be admitted as part of the People's case on rebuttal if it has a tendency to disprove a defense raised by defendant."]). Had the trial court properly relied on Santana, it would have given a conditional ruling, as the Santana court did, and directed that the Molineux evidence was inadmissible unless and until defendant challenged Lafemina's credibility or the propriety of the officers' conduct at trial.[FN3]
Contrary to the People's allegations, defendant's prior gun conviction is not necessary as background information or to complete the narrative because there was other, less prejudicial, evidence the People could and did present to serve that purpose. Specifically, the People introduced other evidence to explain why so many officers were required to arrest defendant as well as to provide a reasonable basis for Lafemina's belief that defendant was armed (see Resek, 3 NY3d at 390 [instead of allowing the jury to hear prejudicial evidence that defendant was initially surveilled by police for possessing a stolen car to explain what led to his arrest, trial court should have simply instructed the jury that the arrest was lawful and not to speculate as to the reasons for it]; Leonard, 29 NY3d at 8 ["introduction of the prior alleged assault was not necessary to clarify [the] relationship [between defendant and the victim]or to establish a narrative of the relevant events"]). Specifically, the People presented testimony about defendant's parole arrest warrant, and Lafemina testified that he observed a bulge in defendant's pocket that was consistent with the shape of a firearm. The People also submitted to the jury a picture depicting the bulge. Therefore, even without defendant's prior gun conviction, the jury would not have had to wonder why the officers pursued defendant so rigorously. Defendant's prior gun conviction served no additional purpose except to expose the jury to prejudicial [*6]evidence. Thus, the prior gun conviction was unnecessary because it is cumulative.
We conclude that the error in admitting defendant's prior gun possession conviction was not harmless (see generally People v Crimmins, 36 NY2d 230, 241—242 [1975]). First, because the prior conviction was not relevant to the case before us, there was a considerable risk that the jury could have used defendant's gun conviction to conclude that defendant is a person of bad character and, therefore, guilty of the charged crimes (see Alvino, 71 NY2d at 241). Second, the risk of undue prejudice is further elevated because defendant's prior gun conviction, which involved a loaded firearm is more severe than the charged burglary (Penal Law §§ 110/265.03[1][b][attempted criminal possession of a weapon]; CPL 1.20[41][a][defining armed felony]). Third, there is an additional risk that the jury might intertwine the facts of the Molineux evidence with the facts of the charged offense. The jury might improperly use defendant's prior gun conviction to conclude that defendant actually possessed a gun and not exclusively to credit Lafemina's belief that defendant might possess a firearm. The jury could have viewed the possible presence of a gun when defendant entered the two buildings as more deserving of punishment because it would assist with establishing that defendant had the requisite intent to commit a crime there (Penal Law § 140.25). Fourth, evidence of defendant's prior conviction certainly made it more difficult for defendant to testify.
Additionally, the People used defendant's prior conviction in a prejudicial manner.[FN4] The People sought to prove that Lafemina's belief was justified that defendant possessed a gun in their initial encounter, which would cause the jury to use it to find defendant had a propensity; that is, because defendant had a gun two years ago, he likely had one in the later encounter. Although defendant's prior gun conviction does not explicitly prove propensity to engage in the charged conduct, the prior gun conviction is prejudicial because the People implied to the jury that they should use it in that manner. The prosecutor argued during closing, "it was reason[able] for [Lafemina] to think that [defendant] might have had a firearm . . . he knew about the prior firearm." On the one hand, the court instructed the jury not to use propensity to convict, while, at the same time, the People implicitly urged the jury to use propensity to credit the officer's belief. Under these circumstances, the prejudice to defendant outweighed the probative value of the evidence of defendant's prior gun conviction.
The trial court's limiting instructions to the jury did not cure the prejudicial effect of the prior gun conviction. Even when limiting instructions have been provided, convictions have been reversed "where the probative value of the uncharged crime was considered substantially outweighed by the prejudicial effect" (People v Fiore, 34 NY2d 81, 84 [1974]; [*7]see Foster, 295 AD2d at 113 [finding the curative instruction insufficient because the prior bad act was overly prejudicial compared to its probative value]). That applies here. The implication that defendant might have had a gun might have encouraged the jury to find that he entered the buildings for the purpose of committing a crime.
Finally, the evidence the People presented was not overwhelming to prove all of the elements of the charged conduct. As to burglary, the People have the burden to prove beyond a reasonable doubt that defendant entered the building with "intent to commit a crime therein" (Penal Law § 140.20; Penal Law § 140.25). Because defendant ran into a building and then immediately ran out, it is not clear that he entered for the purpose of committing a crime there (see generally Matter of William A., 4 AD3d 647, 649 [3d Dept 2004] [finding unlawful entry alone insufficient to establish the juvenile's commission of burglary because it did not establish that he effectuated entry with the intent to commit a crime therein]).[FN5]
Contrary to the People's argument, defendant was not required to object each time defendant's prior conviction was mentioned or to both of the court's limiting instructions because defendant made a clear objection during the pretrial motion in limine. "[A] lawyer is not required, in order to preserve a point, to repeat an argument that the court has definitively rejected" (People v Finch, 23 NY3d 408, 413 [2014]). During the pretrial motions in limine, defense counsel presented a comprehensive argument in opposition to the prosecutor's motion to admit defendant's gun conviction.[FN6]
In view of our holding, we need not address defendant's remaining challenges to the People's summation.
Accordingly, the judgment of the Supreme Court, New York County (Althea E. Drysdale, J.), rendered on September 23, 2019, as amended October 16, 2019, convicting defendant, after a jury trial, of burglary in the second and third degrees and resisting arrest, and sentencing him as a second violent felony offender to an aggregate term of seven years, should be reversed, on the law, and the matter remanded for a new trial.
Judgment, Supreme Court, New York County (Althea E. Drysdale, J.), rendered on September 23, 2019, reversed, on the law, and the matter remanded for a new trial.
Opinion by Gesmer, J.P. All concur.
Renwick, J.P., Manzanet-Daniels, Gesmer, Kennedy, Shulman, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 14, 2023

Footnotes

Footnote 1: The conditional nature of the trial court's ruling is described in the decision on Santana's habeas corpus petition(Santana v Artus, 2009 WL 6384288 at *2, 2009 US Dist LEXIS 126828 at *4—12 [SD NY 2009]).

Footnote 2: The People improperly bolstered the credibility of Lafemina before he was challenged. "It is a basic principle of the law of evidence that a witness's credibility may not be propped or bolstered unless the witness has first been impeached" (People v Valdez, 53 AD3d 172, 174 [1st Dept 2008]).

Footnote 3: The People could have also waited for the defendant to open the door during opening or cross-examination of Lafemina. 

Footnote 4: This is only a factor in favor of finding a weightier prejudicial implication.

Footnote 5: One way in which the People could have convincingly proven that defendant possessed the requisite intent is based on what Lafemina communicated to defendant in their initial encounter. Here, the record is not clear exactly what Lafemina initially communicated to defendant. Lafemina testified on direct that he did not "remember verbatim what [he] said to [defendant and that it] was along the lines of you are going to come with me, or you have a warrant." Murcott testified he heard Lafemina only say "Keith Woody." Because the record is not clear as to exactly what Lafemina said, it is unclear that defendant understood that his running and entering the building was resisting arrest.

Footnote 6: The People's reliance on People v Smith is misplaced. In Smith "defendant . . . failed to object to the testimony in question or otherwise make his position known after the court made no ruling on the prosecution's motion for a prospective ruling with respect to [uncharged crimes] testimony" (People v Smith, 221 AD2d 251, 251 [1st Dept 1995]). Here, in contrast, during the pretrial motion in limine, defense counsel made a clear indication that he objected to the admission of defendant's prior gun conviction.