IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| WILLIAM ZEBROSKI, | § | |
| | § | No. 55, 2024 |
| Defendant Below, | § | |
| Appellant, | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 2102000190A/B (N) |
| STATE OF DELAWARE, | § | |
| | § | |
| Appellee. | § | |

Submitted: December 11, 2024
Decided: February 6, 2025

Before **SEITZ**, Chief Justice; **VALIHURA** and **GRIFFITHS**, Justices.

## <u>ORDER</u>

On this 6th day of February 2025, after careful consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)    A jury convicted Appellant William Zebroski of carrying a concealed deadly weapon and possession of a firearm by a person prohibited. The jury heard testimony at trial of a high-speed car chase with a police task force created by the Governor. Zebroski was a passenger in the vehicle involved in the chase. The chase culminated in the discovery of a firearm under a seat in the pursued vehicle. The jury also heard testimony regarding DNA evidence obtained from the firearm. The State did not present DNA evidence from Zebroski to link him directly to the firearm.

(2)     On appeal, Zebroski contends that the DNA evidence obtained from the firearm had no probative value.  He argues that because the State did not collect admissible DNA evidence from him, the State should be precluded from admitting the DNA evidence obtained from the firearm.  Zebroski also contends that the specific details surrounding his arrest were irrelevant.  He argues that allowing the details made him seem more culpable of criminal activity to the jury.  We find no merit to these arguments and affirm.

(3)     On February 21, 2021, Detectives Brian Holl and Philip Digati were searching for Zebroski as he had an active warrant out for his arrest.[1]  The detectives were members of a task force created by the Governor to execute on arrest warrants ("Governor's Task Force").[2]  Near the evening hours, the detectives received a tip that Zebroski was possibly near the Country Cupboard, a gas station near the Delaware and Maryland border.[3]  While surveilling the gas station in separate vehicles, the detectives located Zebroski sitting in the front-passenger seat of a White Buick SUV.[4]  The Buick was driven by a woman named Linda Reynolds.[5]

---

[1] App. to Opening Br. at A59–60.

[2] *Id*. at A58, A105.  As members of the Governor's Task Force, Detectives Holl and Digati handle narcotics and firearms investigations, and search for persons with active arrest warrants.  *Id*.

[3] *Id.* at A60.

[4] *Id.* at A61–63, A107.

[5] *Id.*

2

Reynolds eventually drove away from the gas station with Zebroski still in the front-passenger seat.[6] The detectives gave chase. Detective Holl turned on his sirens to signal to Reynolds to pull over.[7] She did not stop. Instead, she accelerated, making her way from Delaware to Maryland.[8] The detectives suspended pursuit at the Delaware border.[9] They expected the Buick to return to Delaware eventually. They strategically positioned themselves at the Delaware border and waited.[10]

(4)    About two and a half hours later, the Buick reappeared, driving across the intersection between Route 301 and 299.[11] This time, Detective Digati pulled ahead of the Buick while Detective Holl boxed in the Buick from behind.[12] This maneuver let them make a successful tactical stop of the vehicle.[13] After the stop, Detective Holl arrested and searched Zebroski.[14] Detective Holl found three nine-millimeter rounds in Zebroski's jacket pocket.[15] Detective Digati searched the

---

[6] *Id.* at A63–64.

[7] *Id.*

[8] *Id.* at A65.

[9] *Id.* at A65–66.

[10] *Id.*

[11] *Id.* at A67.

[12] *Id.* at A69, A114.

[13] *Id.*

[14] *Id.* at A74, A117–18.

[15] *Id.*

3

Buick.[16]  There, he found a Ruger nine-millimeter firearm under the front-passenger seat—the same seat where Zebroski had been sitting.[17]

(5)    Reynolds was charged with hindering prosecution, disregarding a police signal, and driving with a suspended or revoked license.[18]  The State later dismissed the charges against Reynolds.  The State went to trial against Zebroski for carrying a concealed deadly weapon ("CCDW") and possession of a firearm by a person prohibited ("PFBPP").  The Superior Court severed the charges into a bifurcated trial, with an "A trial" for a jury on the CCDW charge, and a "B bench-trial" on the PFBPP charge.

(6)    At the pretrial conference, the parties raised evidentiary issues with the trial court relating to two warrants—the active arrest warrant that led to the car chase, and a warrant issued for the collection of DNA evidence from Zebroski.

(7)    As to the first warrant, the State moved to admit evidence of the active arrest warrant to explain why the detectives were searching for Zebroski on the night of the car chase.  Defense counsel objected, arguing that the mention of the arrest warrant was prejudicial to Zebroski.  Over defense counsel's objection, the trial court allowed for its admission.  But its admission was limited.  The State was prohibited

---

[16] *Id.* at A71, A116–17.

[17] *Id.*

[18] *Id.* at A126.

4

from stating the basis for the warrant. The State was also advised that the court would provide a limiting instruction to the jury. The instruction would inform the jury to not consider the arrest warrant as evidence that Zebroski had a propensity to commit criminal acts.[19]

(8)    As to the second warrant, the State conceded that it could not locate a physical copy—this warrant authorized the collection of DNA from Zebroski.[20] Without a copy of the warrant, the court ruled that the State could not use DNA evidence collected from Zebroski. The State then moved to admit the DNA results from the firearm, given that DNA from the firearm itself did not require a warrant. Defense counsel objected, arguing that without DNA from Zebroski, the jury would have no way to make a determination as to whether the DNA results from the firearm matched those taken from Zebroski. The State countered that the DNA results from the firearm showed a mixed profile of at least two individuals, one of whom was male. The State pointed out that the DNA results tracked this case as both male and female occupants were in the vehicle. Even though there would be no direct evidence linking Zebroski's DNA to the firearm, the trial judge allowed the

---

[19] *Id*. at A191.

[20] *Id.* at A16–17. The record is unclear as to what happened to this warrant.

admission of the DNA evidence from the firearm. The court found it probative as the evidence tracked the genders of the occupants of the Buick.

(9) At trial, the State presented the DNA evidence of the firearm through the testimony of Lesley Shipe, a DNA analyst at the Delaware Department of Forensic Science. Shipe testified that because of insufficient DNA on the firearm, she could not make comparisons and "include or exclude any individual."[21] Despite this limitation, the DNA collected from the firearm established "a two-person mixture, where at least one contributor was male."[22]

(10) The jury returned a verdict of guilty on the CCDW charge in the "A-trial." The court found Zebroski guilty of the PFBPP in the "B bench-trial." The trial judge sentenced Zebroski to five years of incarceration with decreasing levels of probation. On appeal, Zebroski argues that the Superior Court exceeded its discretion in admitting the following evidence: a) the active arrest warrant; b) references to the task force; and c) the details of the high-speed pursuit. He also claims that the Superior Court exceeded its discretion in admitting the DNA evidence derived from the firearm.

---

[21] *Id.* at A103.

[22] *Id.* at A99. The other evidentiary issue raised during the conference was defense counsel's request to admit Reynolds' *nolle prosequi* form to show that the charges against her were dismissed. The trial court granted its admission on the basis that Reynolds' dropped charges were relevant to the case.

(11)   The parties dispute the applicable standard of review for this appeal. The State contends that because defense counsel only objected to the arrest warrant and DNA evidence, an abuse of discretion standard should apply to those issues alone, with the other claims warranting heightened review.  The State argues that plain error review applies to the testimony regarding references to the task force. And, as to the testimony of the pursuit, the State contends that Zebroski waived appellate review altogether by defense counsel's strategic reliance on the dismissed charges against Reynolds.  In the State's view, Zebroski's reliance on the dismissed charges against Reynolds equates to reliance on the testimony of the pursuit, thereby requiring waiver of appellate review.  Zebroski counters that his pre-trial objection to the admission of his active warrant should extend to all evidence leading to the stop.[23]

(12)   Zebroski made timely objections to the active arrest warrant and the DNA evidence and so we review those issues for an abuse of discretion.  Objecting to the introduction of the arrest warrant, however, did not encompass the testimony about the task force or the high-speed pursuit.  Defense counsel never mentioned the

---

[23] Reply Br. at 1 ("The State presents a false impression that the totality of the evidence related to Zebroski's warrant status was not covered by defense counsel's objection.  This is simply not true. As reflected by her inquiry following defense counsel's objection, it is clear the judge understood the objection was to evidence leading up to the stop.").

identity of the task force that the officers belonged to, nor the details of the pursuit. We therefore review for plain error.[24]

(13) The trial judge's admission of Zebroski's active arrest warrant was not an abuse of discretion. An abuse of discretion occurs when "a court has exceeded the bounds of reason in light of the circumstances, or so ignored recognized rules of law or practice so as to produce injustice."[25] Here, evidence of the active arrest warrant explained why the officers were searching for Zebroski. The trial judge also prohibited the State from explaining the basis of the warrant, and later issued an instruction to the jury for it not to consider the warrant as propensity evidence. The instruction limited any improper inferences the jury could make from the background information. Given these circumstances, we see no abuse in permitting limited evidence of the arrest warrant.

(14) We also find no plain error in letting the State present evidence of the task force or the pursuit. To reverse for plain error, "the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and

---

[24] We also do not find that defense counsel waived plain error review regarding the testimony of the pursuit. Moving to admit a certified copy of the dismissed charges against Reynolds is not equivalent to affirmatively relying on the testimony of the pursuit. Although the charges arose from the circumstances of the flight, defense counsel relied on the fact that the charges were *dismissed*, not the flight itself. *See* App. to Opening Br. at A53, A124–26, A177–78.

[25] *McNair v. State*, 990 A.2d 398, 401 (Del. 2010).

8

integrity of the trial process."[26] Even so, a party may waive appellate review by making a strategic decision not to object.[27] Background information "may fill in gaps in 'interwoven events'" of a narrative, letting the jury see a "complete picture" of a case.[28] "An arresting or investigating officer should not be put in the false position of seeming just to have happened upon the scene," but should be "allowed some explanation of his presence and conduct."[29] It may, however, be prejudicial to the defense and require balancing under Rule 403.[30]

(15) Here, the detectives' testimony describing the pursuit gave the jury a full picture. It explained why the detectives were on notice for a Buick re-entering the State line, and the reason for the tactical stop. Without these details, the detectives' presence and actions would have lacked context and distorted the narrative.

(16) Zebroski argues to the contrary. He claims that he suffered prejudice from the admission of this testimony because it made him seem guilty of more

---

[26] *Hastings v. State*, 289 A.3d 1264, 1270 (Del. 2023) (quoting *Lowther v. State*, 104 A.3d 840, 845 (Del. 2014)).

[27] *Stevenson v. State*, 149 A.3d 505, 516 (Del. 2016) (citing *King v. State*, 239 A.2d 707, 709 (Del. 1968)).

[28] *Sanabria v. State*, 974 A.2d 107, 112 (Del. 2009) (quoting *People v. Resek*, 821 N.E.2d 108, 109–110 (N.Y. 2004)).

[29] *Id.* (quoting McCormick, *Evidence* § 249 at 734 (Cleary 3d ed. 1984)).

[30] D.R.E. 403; *Sanabria*, 974 A.2d at 112.

serious offenses. But we do not find this alleged prejudice amounted to plain error. The testimony of the pursuit served as relevant background information, and the jury needed only consider the crimes for which Zebroski was charged. Zebroski showed that the police only charged Reynolds for the pursuit. Zebroski was also able to show that Reynolds' charges were dropped completely. This evidence reduced any seriousness the jury may have attributed to the pursuit.

(17) Next, Zebroski claims that the testimony revealing the detectives' participation on the Governor's Task Force was unfairly prejudicial. Testimony about an officer's division is relevant to providing context to the jury about the witness's experience and duties. The detectives also testified that searching for people with active arrest warrants was one of the primary purposes of the task force. There was no inference that the task force was searching for Zebroski as a part of a larger investigation or for more serious offenses. We find no prejudice here.

(18) Last, Zebroski claims the Superior Court exceeded its discretion in admitting the DNA evidence taken from the firearm. He argues that the inconclusive evidence had no probative value in proving his possession of the firearm and unfairly prejudiced his case. We find no abuse of discretion.

(19) The DNA evidence was relevant and not unfairly prejudicial to Zebroski. The DNA results showed a two-person mixture in which one contributor was male. In a factual scenario where one of the two occupants of the vehicle was

10

a male, this evidence was probative for that limited reason. That there was an insufficient amount of DNA to make any comparisons to allow for inclusion or exclusion of a specific individual did not justify the exclusion of the evidence. Defense counsel was able to (and did) effectively challenge the weight of the DNA evidence by cross examining the DNA witness on this point.[31] We do not find that the Superior Court exceeded its discretion in admitting the DNA evidence.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ N. Christopher Griffiths*
Justice

---

[31] *See* App. to Opening Br. at A102–03. It was also defense counsel's intent to argue that there was no DNA match. But to rebut the suggestion that this was due to the State's failure to conduct a DNA investigation at all, or that the DNA evidence conclusively excluded Zebroski, the court allowed testimony from the DNA expert that there was an insufficient amount of data to exclude or include a particular individual. *See id*. at A21–22.